RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 07a0022p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 05-6882

GERRY M. DAVIS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Chattanooga.
No. 05-00038—Curtis L. Collier, Chief District Judge.

Argued: October 30, 2006

Decided and Filed: January 17, 2007

Before: SILER, GILMAN, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ARGUED:** David S. Wigler, LAW OFFICES OF HERBERT S. MONCIER, Knoxville, Tennessee, for Appellant. Gary Humble, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee. **ON BRIEF:** David S. Wigler, LAW OFFICES OF HERBERT S. MONCIER, Knoxville, Tennessee, for Appellant. Gary Humble, ASSISTANT UNITED STATES ATTORNEY, Chattanooga, Tennessee, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge. Defendant Gerry M. Davis appeals his extortion convictions in violation of 18 U.S.C. § 1951 (the "Hobbs Act"). Davis appeals on the ground that the extortion must have a substantial effect on interstate commerce to satisfy the commerce element of the Hobbs Act. Moreover, he contends that the Government failed to prove that the extortion had even a *de minimis* effect on interstate commerce. For the reasons that follow, we affirm the conviction.

### I.

Joseph Cooke was the owner of several bars in Chattanooga, Tennessee between 1997 and 2004. One of those bars was the Chattanooga Food and Drink (the "Drink"), which Cooke owned and operated between November 2001 and October 2004. The Drink purchased most of its alcohol from an in-state distributor, but would occasionally buy from a retail shop in Dalton, Georgia. Cooke also testified that customers from "the surrounding states" would frequent the Drink.

1

In 1997, Davis, an officer of the Chattanooga Police Department, began frequenting Cooke's establishments both on- and off-duty. Even though their relationship started amiably, Cooke came to regard Davis as a liability to his bar enterprises. Cooke testified that Davis began acting aggressively toward female patrons, intimidating patrons, and pulling customers over for no reason. Sometime in late 1997, Cooke offered Davis money in an effort to get Davis to refrain from these actions. With this first payment began a cycle in which Davis would harass customers until he received another payoff. The payments all occurred at or in relation to the Drink and Cooke's other bars, where Davis was paid from the till, door cover charges, and sometimes, Cooke's pocket. This cycle continued until 2003.

Davis was indicted in 2005 on the following three counts of Hobbs Act extortion: 1) $100.00 in July 2003; 2) $100.00 in August 2003; and 3) $100.00 in October 2000. During his jury trial, Davis moved for a judgment of acquittal under Fed. R. Crim. P. 29(c) on the ground that the Government had failed to show that the counts of extortion had the required "minimal effect" on interstate commerce. The motion was denied, and the jury found Davis guilty on all three counts in violation of the Hobbs Act.

## II.

Davis's claim, that the Hobbs Act requires proof of a substantial effect on interstate commerce, is ordinarily reviewed *de novo*, as a question of law. *See United States v. Smith*, 182 F.3d 452, 455 (6th Cir. 1999). However, as here, where the defendant did not raise the issue at trial, we review for plain error. *See United States v. Calloway*, 116 F.3d 1129, 1134 (6th Cir. 1997); FED. R. CRIM. P. 52(b). The standard of review for Davis's challenge as to the sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *See United States v. Woods*, 877 F.2d 477, 479 (6th Cir. 1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

The Hobbs Act provides that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion . . . . shall be fined . . . or imprisoned . . . ." 18 U.S.C. § 1951(a). As Davis concedes, the law of this circuit has required only a showing of a *de minimis* connection with interstate commerce to satisfy the Hobbs Act. *See United States v. Chance*, 306 F.3d 356, 374 (6th Cir. 2002) (citing *United States v. Harding*, 563 F.2d 299, 302 (6th Cir. 1977)). However, Davis argues that this court can no longer apply the *de minimis* standard after the Supreme Court's decision in *Gonzales v. Raich*, 545 U.S. 1 (2005), and that we have, in fact, retreated from its strict application, as evidenced by our ruling in *United States v. Wang*, 222 F.3d 234 (6th Cir. 2000) (holding that more than a *de minimis* effect on interstate commerce is required where the Hobbs Act violation is aimed at an *individual* rather than a business) (emphasis added). We find Davis's argument unpersuasive.

In *Raich*, the Supreme Court rejected the argument that Congress had overstepped its Commerce Clause authority by regulating California-cultivated marijuana which was exclusively grown for local use and in conformity with California law. *See Raich,* 545 U.S. at 6-9. In doing so, the Court reaffirmed the principle that Congress has the "power to regulate purely local activities that are part of an economic 'class of activities' that have a substantial effect on interstate commerce." *Id.* at 17 (citations omitted). Moreover, the Court reiterated "that when 'a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence.'" *Id.* (quoting *United States v. Lopez*, 514 U.S. 549, 558 (1995) (citation omitted)). The Court noted that the interstate economic activity which the Controlled Substances Act ("CSA") sought to regulate distinguished the case from *United States v. Morrison*, 529 U.S. 598 (2000), and *United States v. Lopez*, 514 U.S. 549 (1995), where Congress attempted to regulate non-economic activity even absent any connection to interstate

commerce.[1] *See id.* at 23-26 (noting that the Gun-Free School Zone Act and the Violence Against Women Act were criminal statutes that had nothing to do with commerce and were therefore unconstitutional).

There is no reading of *Raich* that supports Davis's contention that this Court cannot continue to apply the *de minimis* standard to Hobbs Act cases, where, as here, the extortion is directed at a business. The Hobbs Act, like the CSA, regulates activities, which, in the aggregate, have a substantial effect on interstate commerce. *See United States v. Bolton*, 68 F.3d 396, 399 (10th Cir. 1995) ("In enacting the Hobbs Act, Congress determined that robbery and extortion are activities which through repetition may have substantial detrimental effects on interstate commerce.") (citing H.R. Rep. No. 238, 79th Cong., 1st Sess., (1945), *reprinted in* 1946 U.S.C.C.A.N 1360, 1370); *see also Wang*, 222 F.3d at 238 ("*Lopez* did not require realignment of the Hobbs Act's jurisdictional nexus because individual instances arising under the statute could, through repetition, have a substantial effect on interstate commerce.") (citing *Smith*, 182 F.3d at 456). Therefore, *Raich* permits, rather than restricts, the continued application of the *de minimis* standard where the Hobbs Act offense is directed at a business.[2]

Davis also argues that even if the *de minimis* standard remains the law of this circuit, the Government, nonetheless, failed to satisfy this burden, and, therefore, the district court erred in denying his Rule 29(c) motion. The only testimony going to the Drink's connection to interstate commerce was Cooke's statements that "a lot of times the alcohol would come from a retail distributor . . . in Dalton, Georgia," and that the Drink's customers traveled interstate from areas including "Atlanta," "Kentucky," and "Virginia." Davis asserts that the Government's argument that but for the extortion of $300.00, Cooke may have purchased more interstate alcohol or received more customers from out-of-state, is insufficient to show even a *de minimis* effect on interstate commerce.

In comparing those cases where the *de minimis* standard was satisfied with those where it was not, *Chance* is one of the few cases where the effect on interstate commerce was not sufficient for Hobbs Act purposes. It involved extortion by a police officer through raids of the victims' gambling operations. *Chance*, 306 F.3d at 375. The court found relevant that "there was no evidence regarding [the gambling outfit's] size, amount of profits, who its customers were, or

---

[1]Similar to *Lopez* and *Morrison* is *United States v. Jones*, 529 U.S. 848 (2000), which Davis also cites to support his argument. However, *Jones* fails to lend support for the same reasons that the Supreme Court found *Lopez* and *Morrison* non-dispositive to its analysis in *Raich*. *Jones* concerned a federal arson statute which made it a crime to damage or destroy "by means of fire or an explosive, any . . . property *used* in interstate or foreign commerce or in any activity affecting . . . commerce . . . ." *Jones*, 529 U.S. at 853 (emphasis added) (quoting 18 U.S.C. § 844(i) (1994 ed., Supp. IV)). The Court narrowly construed the language of § 844(i), reasoning that Congress's selection of the term "used" "is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce." *Id.* at 855. And like *Lopez* and *Morrison*, the Court noted the "traditionally local criminal conduct" that § 844(i) regulated, absent evidence that the property was "used in interstate . . . commerce." *Id.* at 858. Notably, the Hobbs Act does not contain the limiting language of § 844(i), *see* 18 U.S.C. § 1951(a), and does concern conduct that substantially affects interstate commerce, *see Wang*, 222 F.3d at 238 ("[I]ndividual instances arising under the [Hobbs Act] could, through repetition, have a substantial effect on interstate commerce.") (citation omitted).

[2]As Davis correctly points out, we have required more than a *de minimis* effect where an individual, rather than a business, is the target of the Hobbs Act robbery or extortion. *See Wang*, 222 F.3d at 239 ("But when the Government seeks to satisfy the [Hobbs] Act's jurisdictional nexus by showing a connection between an individual victim and a business engaged in interstate commerce, that connection must be a substantial one . . . ."). However, the facts of the instant case make clear that Davis targeted Cooke's businesses and not Cooke, individually. All of Davis's Hobbs Act violations occurred at or in relation to the Drink and Cooke's other nightclubs. The extortion took place through harassment of Cooke's customers. And Cooke used business funds to pay off Davis. Therefore, *de minimis* is the appropriate standard in this case. *See Chance*, 306 F.3d at 374 (explaining that the exception to the *de minimis* standard applies only where the Hobbs Act violation is directed at an individual and not a business).

whether money, either incoming or outgoing, traveled across state lines." *Id.* The only evidence of interstate commerce was that the patrons brought their own food to the gambling site. *Id.* at 376. Therefore, the interstate commerce connection had not been satisfied, even under the *de minimis* standard. *Id.*

*Chance* is distinguished from *United States v. Brown*, 959 F.2d 63 (6th Cir. 1992), where the *de minimis* interstate commerce connection was established. *Brown* involved a charge brought under the Hobbs Act for the attempted robbery of $8,000.00 from a bar. *See id.* at 65. The *de minimis* standard was satisfied because the bar purchased some of its beer from an in-state distributor, which, in turn, purchased all of its beer from out-of-state manufacturers. *See id.* at 68. Davis's Hobbs Act charge is much closer to the attempted robbery in *Brown*, where some connection to interstate commerce was established.[3] The Drink purchased some of its alcohol directly from a Georgia retailer, arguably one step closer than the interstate connection in *Brown*. Even though *Brown* involved a larger amount of money than the instant case, a rational trier of fact could still find the *de minimis* standard was satisfied. *See Raich*, 545 U.S. at 17 ("[W]hen a general regulatory statute bears a substantial relation to commerce, the *de minimis* character of individual instances arising under that statute is of no consequence.") (citation and quotation marks omitted); *see also Brown*, 959 F.2d at 68 ("Given the Hobbs Act's undeniably broad reach, the United States could . . . prosecute virtually every would-be-thief who had been prosecuted and sentenced for the conduct under state law, no matter how trivial the amount at issue. . . . Nevertheless, . . . any change must come from Congress, rather than the courts."); *United States v. Peete*, 919 F.2d 1168, 1174 (6th Cir. 1990) ("There is no requirement that there be an actual effect on interstate commerce – only a *realistic probability* that an extortion will have an effect on interstate commerce.") (citing *United States v. Staszcuk*, 517 F.2d 53, 58-60 (7th Cir.) (en banc), *cert. denied*, 434 U.S. 837 (1975) (emphasis supplied)).

The district court did not err in its jury instructions concerning a *de minimis* effect on interstate commerce, and sufficient evidence was introduced to uphold the convictions.

**AFFIRMED.**

---

[3]The Drink is also distinguishable from the gambling operation in *Chance*, because Cooke testified that he had customers from "the surrounding states," while the *Chance* court noted that there was no evidence of the gamblers' domiciles. *See Chance*, 306 F.3d at 375.