NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0072n.06
Filed: January 29, 2009

No. 07-5512

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| MARK E. WILKINS | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:     McKEAGUE and GRIFFIN, Circuit Judges; and WEBER, District Judge.[*]

**McKEAGUE, Circuit Judge.** Defendant Mark Estell Wilkins appeals his jury conviction and sentence in connection with a mortgage fraud scheme in which he obtained excess funds from mortgage lenders by purchasing real properties using inflated sales prices. Finding that defendant's arguments lack merit, we **AFFIRM**.

**I**

On July 25, 2006, defendant and his fiancée, Jay Ann Snyder, were indicted on four counts. Counts One and Two charged defendant with wire fraud in violation of 18 U.S.C. § 1343. Counts Three and Four charged defendant with making false and fraudulent statements to the U.S.

_____

[*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

Department of Housing and Urban Development ("HUD") on HUD-1 settlement statement forms in violation of 18 U.S.C. § 1001.

According to the indictment, beginning sometime in April 2001 and continuing until about January 2003, Defendant and Snyder defrauded mortgage lenders by purchasing real properties using false HUD-1 forms that reflected inflated sales prices and fees.[1] Snyder, a mortgage broker, assisted in preparing the documents for the transactions, while defendant acted as buyer of the properties. Snyder directed the owners of the title company Executive Title, Donovan Barnes-Bass and Angela Marie Byrd, to prepare two HUD-1 forms—one reflecting the actual sales price, which was given to the seller, and the other reflecting the inflated sales price, which was given to the lender. This is known as a "double-HUD" transaction. As a result of these actions, the mortgage lender disbursed more money than it otherwise would have loaned. Defendant and Snyder split the excess money. Defendant eventually defaulted on all of the loans and the properties went into foreclosure.

Without a plea agreement, Snyder pleaded guilty to all counts of the indictment.[2] Defendant, however, pleaded not guilty and proceeded to a jury trial. At trial, Angela Marie Byrd and FBI Special Agent Anthony Tuggle testified for the government. At the close of the government's proof, defendant moved for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal

---

[1]Under the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2601 *et seq.*, a HUD-1 form is required to be included at all real estate settlements. Among other things, the form is meant to "conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement." 12 U.S.C. § 2603.

[2]Donovan Barnes-Bass and Angela Marie Byrd also pleaded guilty for their participation in the preparation of the false HUD-1 forms. They were each sentenced to 18 months' imprisonment and cooperated in the investigation involving Snyder and defendant.

Procedure. The district court orally denied the motion as to Counts One and Two and reserved judgment as to Counts Three and Four. Snyder then testified for the defense. She admitted that the scheme alleged in the indictment was accurate, except insofar as it alleged that defendant was a knowing participant. Snyder testified that defendant never knew about the double HUD-1 forms or that the scheme was fraudulent. After a two-day trial, the jury found defendant guilty on all four counts of the indictment.

After the jury returned its verdict, defendant renewed his motion for judgment of acquittal pursuant to Rule 29. In the alternative, he sought a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The district court found no basis for vacating the jury's verdict and denied the motion.

At the sentencing phase, the district court determined that the base offense level was 18 and that the criminal history category was I, which yielded a Sentencing Guidelines range of 27 to 33 months. Defendant moved for a downward departure, which the district court denied. The district court then sentenced defendant to 27 months' imprisonment and 3 years of supervised release on each count, to be served concurrently. The district court also ordered defendant to pay restitution of $260,633.39. Defendant timely appealed his conviction and sentence.

**II**

Defendant makes essentially two arguments on appeal. First, he contends that the evidence presented at trial was insufficient to sustain his conviction. Second, he argues that the district court erred in imposing a sentence of 27 months' imprisonment.

**A. Sufficiency of the Evidence**

In reviewing a challenge to the sufficiency of the evidence, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007) (quoting *United States v. Woods*, 877 F.2d 477, 479 (6th Cir. 1989)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In conducting this review, we must "view all evidence and resolve all reasonable inferences in favor of the government." *United States v. Hughes*, 505 F.3d 578, 592 (6th Cir. 2007). We will neither independently weigh the evidence nor judge the credibility of the witnesses, and we will not substitute our judgment for that of the jury. *Id.*; *United States v. Garrido*, 467 F.3d 971, 984 (6th Cir. 2006). Moreover, we note that "circumstantial evidence alone can sustain a guilty verdict," and it "need not remove every reasonable hypothesis except that of guilt." *Hughes*, 505 F.3d at 592 (quoting *United States v. Stone*, 748 F.2d 361, 362 (6th Cir. 1984)). Accordingly, a defendant challenging the sufficiency of the evidence "bears a very heavy burden." *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006).

### 1.  Counts One and Two:  Wire Fraud

Counts One and Two of the indictment alleged that defendant engaged in wire fraud in violation of 18 U.S.C. § 1343, which provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

To convict a defendant under § 1343, the government must prove "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Prince*, 214 F.3d 740, 747-48 (6th Cir. 2000)).

Defendant does not dispute that the evidence presented at trial established the first two elements of a § 1343 violation. "A scheme to defraud includes any plan or course of action by which someone intends to . . . deprive another by deception of money or property by means of false or fraudulent pretenses, representations, or promises." *Id.* (quoting *United States v. Gold Unlimited, Inc.*, 177 F.3d 472, 479 (6th Cir. 1999)). Snyder admitted the existence of such a scheme to defraud when she pleaded guilty to the indictment and when she testified that the description of the mortgage fraud scheme in the indictment was accurate. Further, there is no dispute regarding the out-of-state wire transfers made to Executive Title's escrow account at SunTrust Bank.

Ultimately, then, defendant only challenges his specific intent and knowing participation in the scheme to defraud. To satisfy the intent requirement of § 1343, the government must prove not only that the defendant "ma[de] a material misrepresentation or knowingly omit[ted] a material fact, but also that the misrepresentation or omission [had] the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *Daniel*, 329 F.3d at 488 (quoting *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998)). Intent is generally considered to be a question of fact to be resolved by the trier of fact; accordingly, a jury finding of intent "should not be lightly overturned." *Id*.

Here, defendant argues that although he signed the closing documents for some of the properties, he never knew about the double-HUD scheme or that the transactions were illegal. As support for his argument, he points to Snyder's testimony. Snyder testified that defendant never knew about the two HUD statements and that she never told him there was any fraud.

Even crediting Snyder's testimony as to defendant's state of mind, however, two other witnesses provided testimony that supported the jury's finding of intent. First, Angela Marie Byrd testified that defendant participated in the scheme to obtain additional money from mortgage lenders by inflating the sales prices of properties. She also testified that either she or her partner, Donovan Barnes-Bass, would explain the information on both HUD-1 forms to defendant. Specifically, she testified that they would show defendant the HUD-1 form for the lender, which reflected the false inflated sales price, and would then show him the HUD-1 form for the seller, which reflected the real sales price. She stated that they would also inform defendant of the excess amount of funds he would receive. Moreover, FBI Special Agent Tuggle testified that, during the course of an interview with defendant, defendant admitted that he was present at all of the closings for the sale of the properties, personally negotiated the sales prices for the properties, and knew that he was borrowing more than the sales price on the properties.[3] According to Agent Tuggle, defendant also admitted that he had received more money than he needed to buy the houses, and that he had used the money to do repairs and renovations on the properties. Defendant also admitted to Agent Tuggle that he

---

[3]Defendant argues that Agent Tuggle's testimony is not credible, because he did not record his interview with defendant. But defendant can point to nothing requiring the interview to be recorded, and the credibility of Agent Tuggle's account of the interview was a question for the jury.

and Snyder had purchased some four-wheel all-terrain vehicles and had done repairs and renovations on their own residence with the excess funds.

Given the testimony of both Byrd and Agent Tuggle, and considering our deferential standard of review, we conclude that a rational trier of fact could have found a specific intent on the part of defendant to deprive mortgage lenders of money they would not otherwise have lent. According to the testimony, defendant knew he was receiving more money than needed to purchase the properties. He also knew that the HUD-1 forms reflected two different sales prices. This was more than enough evidence for the jury to conclude that the government had satisfied its burden of proving a specific intent to defraud. *See United States v. Crossley*, 224 F.3d 847, 857 (6th Cir. 2000) (holding that evidence was sufficient to support conviction for mail fraud where it would have been obvious to defendant that she was not entitled to insurance claim money); *United States v. Birnie*, 193 Fed. Appx. 528, 535-36 (6th Cir. 2006) (finding that evidence was sufficient to convict a defendant whose role in the wire fraud was to act as the buyer). As a result, the evidence was sufficient to support defendant's conviction under § 1343.

### 2. Counts Three and Four: False Statements

Counts Three and Four alleged aiding and abetting and false or fraudulent material statements made in any matter within the jurisdiction of the United States Government. 18 U.S.C. § 1001(a) provides, in pertinent part:

> [W]hoever, in any matter within the jurisdiction of the executive . . . branch of the Government of the United States, knowingly and willfully . . .

> (2) makes any materially false fictitious, or fraudulent statement or representation; . . .

shall be fined under this title, [or] imprisoned not more than 5 years.

To convict a defendant under § 1001, the government must prove that (1) the defendant made a statement; (2) the statement was false, fictitious, or fraudulent; (3) the statement was material; (4) the defendant made the statement knowingly and willfully; and (5) the statement pertained to a matter or activity within the jurisdiction of a federal agency. *United States v. Steele*, 933 F.2d 1313, 1318-19 (6th Cir. 1991) (en banc). As discussed above, the testimony of Byrd and Agent Tuggle was sufficient to establish the first, second, and fourth elements: that defendant knowingly and willfully made a false or fraudulent statement by signing two different HUD-1 forms, one of which reflected an inflated sales price for the properties. Defendant, however, challenges the third and fifth elements: the materiality of the false statements, and the jurisdiction of the federal agency.

First, defendant argues that the statements contained in the HUD-1 forms were not "material" because the mortgage lenders did not make any of the loans in reliance on the statements. But "[a] statement is material for purposes of 18 U.S.C. § 1001 if it has the natural tendency to influence or is capable of influencing the federal agency," not the mortgage lender. *United States v. Lutz*, 154 F.3d 581, 588 (6th Cir. 1998) (citing *United States v. Gaudin*, 515 U.S. 506, 509 (1995)); *see also United States v. Swaim*, 757 F.2d 1530, 1535 (5th Cir. 1985) (noting that "[t]he relevant test of materiality . . . looks to whether the statement had the capacity to impair the functioning of a government agency, not the Association" granting the loan). "It is not necessary to show that the statement *actually* influenced an agency, but only that it had the capacity to do so." *Lutz*, 154 F.3d at 588 (emphasis added).

In *Lutz*, the defendant, a mortgage broker and loan originator, falsely checked a box on a HUD form certifying that she had conducted a face-to-face interview with a borrower. *Id.* She argued that such a false statement could not have been material because the form was never received by HUD. *Id.* The court discussed the importance of HUD's requirement of a face-to-face interview, which allows a loan originator to verify the borrower's identity and obtain a more complete financial picture of the applicant. *Id.* The court also noted that "HUD relies on the lender having obtained all of the required information at the initial application stages." *Id.* As a result, "[e]ven if HUD [did] not rely on the certification statement directly, the statement [was] still material because it [had] a natural tendency to influence." *Id.* Ultimately, then, the "the government was not required to show that the form itself went to HUD in order to establish that the false information on the form was material." *Id.*

Here, both Byrd and Michael Sund, a representative of one of the defrauded mortgage lenders, testified that federal law requires the use of the HUD-1 form at closings, and that the form is important in the closing, the mortgage process, and the lender's decision. For example, Byrd testified that the form explains the purchase price and the loan amount, as well as all fees and charges, to all parties involved in the transaction. Moreover, under the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C § 2601 *et seq.*, a HUD-1 form is required at all real estate settlements. It is meant to "conspicuously and clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement." 12 U.S.C. § 2603. Because of the stated importance of the disclosures on the HUD-1 form, then, statements on

the form have a "natural tendency to influence" even if HUD may not directly rely upon them. *Lutz*, 154 F.3d at 588. As in *Lutz*, there was sufficient evidence to support a finding of materiality.

Defendant also argues that statements made on the HUD-1 forms were not within the jurisdiction of a federal agency. For purposes of § 1001, "jurisdiction" should not be defined narrowly or in a strictly technical sense. *United States v. Gibson*, 881 F.2d 318, 322 (6th Cir. 1989); *see also United States v. Rodgers*, 466 U.S. 475, 480 (1984). Rather, an agency has jurisdiction "when it has the power to exercise authority in a particular situation," as distinguished from a matter "peripheral to the business" of the agency. *Gibson*, 881 F.2d at 322 (quoting *Rodgers*, 466 U.S. at 479). Moreover, "[f]ederal departments and agencies have 'the power to exercise authority' in a great many matters not completely controlled by those departments or agencies." *Id.* And "[t]here is no implicit requirement that the statements be made directly to, or even be received by, the federal department or agency." *Id.*; *see also United States v. Davis*, 8 F.3d 923, 929 (2d Cir. 1993). Ultimately, "it is the mere existence of the federal agency's supervisory authority that is important to determining jurisdiction." *Davis*, 8 F.3d at 929.

Here, the district court correctly concluded, "as a matter of law and common sense," that HUD has jurisdiction over HUD-1 forms. *United States v. Wilkins*, No. 1:06-CR-76-02, 2007 WL 896147, at *8 (E.D. Tenn. Mar. 22, 2007). As stated above, a HUD-1 settlement statement form is required by RESPA, 12 U.S.C § 2601 *et seq.*, and HUD's implementing Regulation X, *see* 24 C.F.R. § 3500.1 *et seq.*, in every closing "involving a federally related mortgage loan in which there is a borrower and a seller," 24 C.F.R. § 3500.8. The form furthers RESPA's aim of "more effective

advance disclosure to home buyers and sellers of settlement costs." 12 U.S.C. § 2601(b)(1). As both

Byrd and Sund testified, it is critically important to all parties to a real estate transaction.

Importantly, the Secretary of HUD has the authority to develop and prescribe the HUD-1 form "as

the standard real estate settlement form in all transactions in the United States which involve

federally related mortgage loans." 12 U.S.C. § 2603(a). Accordingly, we conclude that the false

statements on the HUD-1 forms in this case pertained to a matter within the jurisdiction of HUD.

Because there was sufficient evidence for the jury to find a violation of § 1001, we affirm

defendant's conviction as to Counts Three and Four.

## B. Sentence

Defendant next challenges the district court's imposition of a 27-month sentence.

### 1. *Offense Level Reduction Pursuant to § 3B1.2*

First, defendant argues that he was entitled to a two-level reduction of the offense level under

§ 3B1.2(b) of the Sentencing Guidelines for being a "minor participant" in the criminal activity.

"Whether a defendant is entitled to a downward offense-level adjustment under U.S.S.G. § 3B1.2

'depends heavily on factual determinations, which we review only for clear error.'" *United States*

*v. Bailey*, 488 F.3d 363, 369 (6th Cir. 2007) (quoting *United States v. Harris*, 397 F.3d 404, 409 (6th

Cir. 2005)). Defendant bears the burden of proving by a preponderance of the evidence that he is

entitled to a reduction. *Id.*

A "minor participant" is one "who is less culpable than most other participants, but whose

role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n. 5. In considering defendant's

request for a reduction at the sentencing phase, the district court noted that defendant was involved

in a large number of the fraudulent double-HUD transactions that occurred throughout the course of the scheme. The court also pointed out that, according to the testimony at trial, the settlement papers were covered in some detail at the closings. Moreover, defendant knew that he would receive excess funds from the transactions and personally profited from these transactions. Based on these facts, the district court concluded that defendant had not satisfied his burden of establishing that he was a minor participant in the fraudulent scheme, and therefore rejected his request for a reduction under § 3B1.2.

On appeal, defendant essentially repeats the same arguments he made to the district court. He argues that he did not conceive of the double-HUD scheme, nor did he organize, manage, or coordinate it. As an electrician, he claims he had little knowledge of the mortgage lending field. He claims that Snyder, Barnes-Bass, and Byrd were the "professionals" who were most actively involved in the fraud. According to defendant, he was only there to sign the paperwork and obtain the excess funds, as instructed.

Ultimately, however, we are unable to conclude that the district court's factual determinations were clearly erroneous. On those facts, the court's finding that defendant was not less culpable than most of the other participants—and therefore that he did not qualify as a minor participant—was also not clearly erroneous. And although defendant argues that he did not organize or plan the fraudulent scheme at issue here, "[w]e have rejected absence from the planning of a conspiracy as the basis for a reduced role." *United States v. Duckro*, 466 F.3d 438, 447 (6th Cir. 2006). Accordingly, we affirm the district court's refusal of the request for an offense level reduction under § 3B1.2.

### 2. Calculation of Amount of Loss Pursuant to § 2B1.1

Defendant next argues that the district court improperly calculated the loss attributable to his actions for purposes of calculating his offense level under § 2B1.1 of the Sentencing Guidelines. The district court determined the loss to be $261,000.00 and denied defendant's request for a credit of $43,351.45, the amount allegedly expended in repairing and renovating the properties. Defendant contends that he should have been sentenced based on a loss of $127,998.15—his alleged personal share of the excess funds received as a result of the fraudulent scheme, as opposed to the total amount of excess funds received among all coconspirators. He also claims that he was entitled to a credit of $43,351.45 for the amount expended on improvements to the properties. This would have resulted in a net loss of $84,646.70, an offense level of 14 pursuant to U.S.S.G. § 2B1.1.(b)(1)(E), and a sentencing range of 15 to 21 months' imprisonment.

We review the district court's findings of fact as to loss for clear error. *United States v. Triana*, 468 F.3d 308, 321 (6th Cir. 2006).

Actual loss is the "reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(i). "[R]easonably foreseeable pecuniary harm" is defined as "harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense." U.S.S.G. § 2B1.1 cmt. n.3(A)(iv). Here, actual loss included not only the amount of proceeds defendant himself pocketed, but also the amount of loss resulting from the entire scheme. When he split the excess funds with Snyder, defendant knew he was not receiving all of the proceeds; other individuals were also benefitting from the scheme. Thus, the district court's determination that defendant should be responsible for the full $261,000 loss was not clearly erroneous.

Further, the district court did not clearly err in determining that defendant was not entitled to a credit for the amount expended to improve the properties. Indeed, the Sentencing Guidelines provide that the loss amount should be reduced by the "money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the defense was detected." U.S.S.G. § 2B1.1 cmt. n.3(E). Here, however, the loss amount had already been credited with the sales prices of the properties that had been sold at foreclosure. And as the government points out, the sales prices of these properties would have accounted for any value created by the improvements. An additional credit for the amount expended on the improvements, then, was not warranted.

Accordingly, the district court did not commit error in calculating the amount of actual loss under § 2B1.1.

### 3. *Downward Departure/Reasonableness of Sentence*

Finally, in just over one page of his brief, defendant argues that his sentence was "excessive in violation of 18 U.S.C. Section 3553." Appellant's Br. at 52. He quotes 18 U.S.C. § 3553(a) and then "submits that for all the reasons detailed above, the Trial Court should have granted a downward departure and sentenced [defendant] below the applicable Guidelines Range." *Id.*

Initially, we note that the district court's refusal to grant defendant's request for a downward departure is not reviewable on appeal, because the district court explicitly stated that it was aware of its discretion to grant such a departure. *See United States v. Puckett*, 422 F.3d 340, 344 (6th Cir. 2005).

Further, insofar as defendant challenges the reasonableness of his sentence, he has failed to sufficiently develop that argument and has therefore waived it on appeal. *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that 'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999))). Even were we to address the merits of the reasonableness argument, however, we would conclude that the district court did not abuse its discretion in imposing a 27-month sentence and that the sentence was both procedurally and substantively reasonable. *See Gall v. United States*, 128 S. Ct. 586, 594-97 (2007). The record indicates that the district court committed no significant procedural error, "such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence."[4] *Id.* at 597. Moreover, because defendant's sentence falls within the properly calculated Guidelines range of 27 to 33 months, we afford it a presumption of substantive reasonableness. *United States v. Carter*, 510 F.3d 593, 601 (6th Cir. 2007). Defendant has failed to rebut this presumption by showing that the district court "select[ed] the sentence arbitrarily, base[d] the sentence on impermissible factors, fail[ed] to consider pertinent

---

[4]Although defendant argues that the district court failed to consider the disparity between his sentence and the 18-month sentences received by Byrd and Barnes-Bass, "[s]ubsection 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct. It is not concerned with disparities between one individual's sentence and another individual's sentence." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Thus, although the district court had the discretion to consider defendant's sentence in light of the sentences of other individuals, § 3553 did not require the district court to do so. *Id.* at 624.

§ 3553(a) factors or [gave] an unreasonable amount of weight to any pertinent factor." *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007). Accordingly, defendant's sentence was both procedurally and substantively reasonable.

### III

For the foregoing reasons, we **AFFIRM** defendant's conviction and sentence.