NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0480n.06

Case No. 24-3165

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Dec 03, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| RONALD LEE JACOBS, | ) | |
|     Defendant-Appellant. | ) | |
| | ) | OPINION |

Before: McKEAGUE, THAPAR, and LARSEN, Circuit Judges.

THAPAR, Circuit Judge. Ronald Jacobs committed thirteen robberies in under two months. He was charged with six and convicted of each. Now he objects to several of the district court's decisions at trial. He also contends there was insufficient evidence to convict him of brandishing a firearm while committing one of the robberies. Those claims don't have merit. But his sentencing claim—that the district court didn't adequately explain how it arrived at his Guidelines range—does.

I.

Ronald Jacobs committed a slew of armed robberies in Columbus. While robbing a Walgreens, Jacobs grabbed a package of gum but left it behind. The police found Jacob's fingerprints on the gum and obtained a warrant for his arrest. Jacobs surrendered and confessed.

We confirmed that his confession was voluntary, and his case proceeded to trial.  *See United States v. Jacobs*, 63 F.4th 1055, 1060 (6th Cir. 2023).

The jury convicted Jacobs of six counts of Hobbs Act robbery.  And the jury found Jacobs guilty of one count of brandishing a firearm during and in relation to a crime of violence.  Now Jacobs appeals (1) the district court's decision to admit fingerprint evidence at trial without a *Daubert* hearing, (2) the district court's answer to a jury question about the fingerprints, (3) the sufficiency of the evidence underlying his conviction for brandishing a firearm, and (4) the district court's calculation of his total offense level and Guidelines range.

II.

This case began with Jacobs picking up a package of gum and leaving his fingerprints behind for the police to find.  *See id.* at 1057.  Fittingly, two of Jacobs's claims on appeal relate to these fingerprints.  First, he objects to the admission of testimony by a forensic fingerprint examiner.  Jacobs argued below that fingerprint evidence was unreliable and should be excluded. The district court declined to hold a *Daubert* hearing and rejected his motion.  *See Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579 (1993).  Now Jacobs contends that the court abused its discretion by declining to hold a hearing.  It did not.

A.

At trial, the government sought to introduce testimony by Amanda Wilberg, a forensic fingerprint examiner.  Wilberg had used the ACE-V method[1] to match the "latent" prints the robber left behind with two sets of "known" prints that belonged to Jacobs.  Latent fingerprints are fingerprints left behind on an object.  Known fingerprints, by contrast, are made by an individual

---

[1] "ACE-V" stands for analysis, comparison, evaluation, and verification.

who rolls their fingerprint in ink. Jacobs filed a motion in limine, contending that this evidence, and the ACE-V fingerprint identification method in general, was unreliable.

Jacobs alleged that there hasn't been testing on the probability of different people having the same fingerprint characteristics. Without this testing, latent fingerprint evidence lacked a known error rate. And a known error rate helps show reliability under *Daubert*. *See Daubert*, 509 U.S. at 594. In support, Jacobs cited two articles calling for studies on the accuracy of fingerprint evidence.[2]

In response, the district court pointed out that (1) Jacobs's articles were twenty years old and (2) Jacobs couldn't identify a single case in which a court had adopted the reasoning from these articles to exclude fingerprint evidence. Instead, the district court concluded that this was an "ordinary case[] where the reliability of an expert's methods is properly taken for granted." R. 105, Pg. ID 938 (alteration in original) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). In doing so, the district court relied on cases where courts rejected similar attacks on latent fingerprint evidence without a hearing. *See id.* at Pg. ID 937–38 (discussing *United States v. Stone*, 848 F. Supp. 2d 714, 717 (E.D. Mich. 2012) and *United States v. Cromer*, No. 1:01-CR-130-01, 2006 WL 1430210, at *1 (W.D. Mich. May 23, 2006)).

Jacobs argues that fingerprint evidence's admissibility is now up-for-grabs. *See* R. 73, Pg. ID 800 (calling the reliability of fingerprint evidence an "unproven assumption that . . . can no longer be sustained post-*Daubert*"). But courts have repeatedly upheld the use of latent fingerprint evidence under the ACE-V method in the thirty years since *Daubert*. *See United States v. Pena*,

---

[2] Jacobs cited a National Institute of Justice article from 2000 that solicited further research on fingerprints. Courts have rejected reliability attacks based on this exact article. *See United States v. Crisp*, 324 F.3d 261, 267, 270 (4th Cir. 2003).

586 F.3d 105, 110–11 (1st Cir. 2009) (collecting cases); *United States v. Mitchell*, 365 F.3d 215, 233–46 (3d Cir. 2004) (conducting an exhaustive *Daubert* analysis of the ACE-V method).[3]

Jacobs further contends the district court abdicated its "gatekeeping" responsibilities by not holding a hearing. But courts don't have to hold a *Daubert* hearing every time a party raises a reliability question. *Clay v. Ford Motor Co.*, 215 F.3d 663, 667 (6th Cir. 2000); *see Mitchell*, 365 F.3d at 246 (concluding that a district court wouldn't abuse its discretion by "dispensing with the hearing altogether if no novel challenge [to latent fingerprint evidence] was raised").

The district court provided Jacobs with a reasoned decision that responded to his reliability concerns. As the district court concluded, "[i]t would be a drastic measure" to find that this fingerprint evidence failed *Daubert*'s reliability threshold. R. 105, Pg. ID 938. And Jacobs has not provided us with any reason to question the district court's judgment here, let alone conclude that "it committed a clear error of judgment" when it declined to hold a hearing on such a well-established form of evidence. *Conwood Co. v. U.S. Tobacco Co.*, 290 F.3d 768, 781 (6th Cir. 2002). Thus, Jacobs's claim fails.

B.

Now, for the second fingerprint claim. The government called Wilberg, the forensic fingerprint examiner, as an expert witness at trial. The government also presented two slides with side-by-side comparisons of the latent and known fingerprints to the jury. The first slide showed the latent prints on the left and one set of Jacobs's known prints (labeled "185417GD") on the

---

[3] In fact, the National Institute of Justice—the author of the article from 2000 that Jacobs relied on—confirmed in 2022 that Wilberg's methodology was sound. *See* National Institute of Justice, *The History and Legacy of the Latent Fingerprint Black Box Study*, https://nij.ojp.gov/topics/articles/history-and-legacy-latent-fingerprint-black-box-study (discussing a 2011 FBI study that determined latent fingerprint evidence had a false positive rate of only 0.1%).

right. The second slide also compared the latent prints on the left with Jacobs's other set of known prints (labeled "165329DC") on the right.

(1)

When the jury was deliberating, they had a question about these exhibits. They asked, "Are the fingerprints . . . in Exhibits [P]10B, the same person? Specifically, we are asking if the right fingerprint in 165329DC [(S6)] is the same individual as in 185417GD [(S6)]?" R. 174, Pg. ID 2568. After some back-and-forth between the lawyers and the district court, they determined that the jury was referencing the two sets of known prints. The fingerprint marked "185417GD" was one of Jacobs's known prints. And the fingerprint marked "165329DC" was Jacobs's other known print.

The jury did *not* ask if Jacobs's known prints matched the robber's latent prints. That was a question the jurors had to consider for themselves. Rather, the jurors were confirming that both known prints came from the same person. After all, if they weren't from the same person, that would mean there were two potential matches for the robber's prints. And it'd be much harder to conclude that Jacobs committed the crime.

Since the known fingerprints belonged to the same person (Jacobs), the government thought the judge's answer should simply be "yes." The only thing challenged at trial was the "results of a comparison" between the latent and known prints—not the authenticity or validity of the known prints themselves. Plus, the jury didn't ask whom the known prints belonged to; they just wanted to check that the two known prints belonged to the same person. So answering "yes" would clear up any potential confusion about there being "two matches" for the robber.

But Jacobs requested a different answer from the court. Since this was a question of fact, and since there was no formal stipulation that the known prints belonged to the same individual,

Jacobs maintained that the court should simply "refer the jury back to their collective memory." *Id.* at Pg. ID 2575. The court struck a compromise and did both. Since "nobody contested that these were the prints of the same person," the court told the jury that the direct answer to its question was "yes." *Id.* at Pg. ID 2575, 2589. But the court also reminded the jury to "rely on your collective memories." *Id.* at Pg. ID 2589.

(2)

Jacobs objected to the court's response below and appeals on the same basis. Jacobs argues that the court's "yes" inappropriately usurped the jury's role as factfinder. He claims that this was a "contentious fact-based question" and that the court should have referred the jurors to their collective memory rather than deciding an evidentiary dispute. Appellant Br. at 19. We review a district court's response to jury questions for abuse of discretion. *United States v. Davis*, 970 F.3d 650, 662 (6th Cir. 2020). And we reverse only if the response prejudiced the defendant. *Id.*

Here, we need not even decide whether the district court abused its discretion because the answer wasn't prejudicial. Neither party contested that the known fingerprints both belonged to Jacobs, since that fact was indisputable. The known prints came from Jacobs's prior conviction for robbery and his arrest for the string of robberies that gave rise to this case. Indeed, the exhibits could've labeled the known fingerprints with Jacobs's name instead of a string of numbers, and Jacobs couldn't have objected. This court has declined to find prejudice in similar circumstances, when there was "literally zero [contradictory] evidence in the record." *Id.* at 662–63 (citation omitted). We do the same here.

III.

Next, Jacobs brings a sufficiency-of-the-evidence challenge to his § 924(c) conviction for brandishing a firearm while robbing a Wing Snob. Section 924(c) criminalizes "brandish[ing]" a

firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A)(ii). Hobbs Act robbery qualifies as a crime of violence. *See United States v. Camp*, 903 F.3d 594, 597 (6th Cir. 2018).

We must affirm if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Davis*, 473 F.3d 680, 681 (6th Cir. 2007). Moreover, we view the evidence in the light most favorable to the prosecution. *Id.* And Jacobs didn't renew his Rule 29 motion for acquittal after presenting his evidence. So Jacobs must also show that his denied Rule 29 motion resulted in a "manifest miscarriage of justice." *United States v. Dunnican*, 961 F.3d 859, 877 (6th Cir. 2020) (citation omitted). Jacobs thus faces an uphill battle.

Jacobs contends that there wasn't enough proof that he had a firearm when he robbed the Wing Snob. The camera and video footage were blurry; any weapon he allegedly had was concealed; and the sole eyewitness' testimony wasn't corroborated. So, he says, all this evidence amounted to "speculation." Appellant Br. at 31. We disagree.

Kristie Eaton, a shift manager at Wing Snob, testified that she "looked up and there was a gun and he said to get on the ground, open the safe and be quiet." R. 170, Pg. ID 1696. When asked to describe the gun, Eaton responded that "[i]t was a single barrel on the smaller end. It wasn't very large. But it looked like a rifle." *Id.* at Pg. ID 1697. Though she couldn't see the whole gun because "[i]t was covered with a jacket," Eaton identified the gun when shown surveillance photos. *Id.*; *Id.* at Pg. ID 1700–01. As Eaton explained, the gun clanged on Jacobs's jacket zipper, and "metal against metal makes a different noise than plastic on metal." *Id.* at Pg. ID 1712. When pressed on cross-examination, Eaton retorted that it "was plain as day" that Jacobs had a firearm. R. 170, Pg. ID 1713.

Police officer testimony corroborated Eaton's account. The officer who investigated the robbery reported his conversation with the cashier shortly after the incident. The cashier relayed that the perpetrator was "concealing a black rifle." *Id.* at Pg. ID 1688. And if that weren't enough, Jacobs's own statements serve as evidence for his § 924(c) conviction. Detective Agee interviewed Jacobs after Jacobs turned himself in. At trial, the government played video recordings of Jacobs's incriminating response to Detective Agee that "[t]he weapons, they gone." R. 172, Pg. ID 2154. Jacobs also told Detective Agee he had placed clothing over his shotgun because the gun was "too big." *Id.* at Pg. ID 2165.

One eyewitness, corroborating officer testimony, and several incriminating statements by Jacobs. That's more than enough to support a guilty verdict on the § 924(c) count.

IV.

Finally, Jacobs objects to the district court's calculation of his total offense level and Guidelines range. Jacobs contends that his total offense level should've been 27, not 28. And Jacobs argues his Guidelines range thus should've been 78–97 months, not 87–108 months. A sentence is procedurally unreasonable if the district court miscalculates the Guidelines range or fails to adequately explain the chosen sentence. *See United States v. Mack*, 808 F.3d 1074, 1084 (6th Cir. 2015) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Since Jacobs failed to make this argument below, our review is for plain error. *See United States v. O'Lear*, 90 F. 4th 519, 535 (6th Cir. 2024).

It's unclear from the record how the district court arrived at an offense level of 28. This much we do know: The base offense level for Hobbs Act robbery is 20. U.S.S.G. § 2B3.1(a). The probation officer recommended several enhancements: brandishing a firearm (+5), physically restraining a person in commission of the offense (+2), obstruction of justice (+2), and a multiple-

count adjustment (+5). The district court sustained Jacobs's objections to the firearm and obstruction enhancements. But the district court found that the physical-restraint enhancement applied to count two. So Jacobs's highest adjusted offense level was 22. Next, to calculate Jacobs's combined adjusted offense level, the district court would've taken the highest adjusted offense level (22) and added it to the multiple count adjustment (5). That sum should've made 27, as Jacobs argues.

But there's a twist. The government argued at sentencing for a three-level enhancement for brandishing a dangerous weapon if the court declined to apply the five-level firearm enhancement. That enhancement would've made Jacobs's highest adjusted offense level 23, not 22. If the court indeed applied the three-level dangerous-weapon enhancement, the math checks out: a base level of 20, plus three for the dangerous-weapon enhancement, plus five for the multiple-count adjustment makes 28.

The problem is there's no mention of the dangerous-weapon enhancement in the presentence report. And at sentencing, the district court never said that it would apply the dangerous-weapon enhancement. Instead, the district court consulted off-the-record with the probation officer and then announced an offense level of 28. To be sure, the district court had earlier mused that it could find that "[Jacobs] had something wrapped up and maybe that was a dangerous weapon." R. 199, Pg. ID 2795. And the district court requested a separate memorandum from the probation officer with calculations for the dangerous-weapon enhancement.

But critically, the district court never stated what enhancements it applied. In fact, at the time, the government seemed to think the district court *hadn't* applied the dangerous-weapon enhancement since it expressly preserved an objection to the court's "declining to impose the

dangerous weapon enhancement." R. 200, Pg. ID 2850. If the district court really did apply the dangerous-weapon enhancement, that would've been a great opportunity to clarify.

"[I]t is not this court's duty to supply reasons for the district court's sentencing decision." *United States v. Fowler*, 819 F.3d 298, 306 (6th Cir. 2016). The district court didn't just fail to give an adequate explanation of the reasons for the sentence it imposed; it failed to identify what enhancements it applied. That amounts to plain error. Thus, we vacate Jacobs's sentence and remand for the district court to clarify what sentencing enhancement it used.

\* \* \*

There was sufficient evidence to support Jacobs's § 924(c) conviction. And the district court didn't abuse its discretion when it (1) admitted fingerprint evidence without a *Daubert* hearing and (2) answered the jury's question about the fingerprint evidence. But we remand for the district court to clarify which sentencing enhancements it applied.