UNITED STATES of America, Plaintiff–Appellee,

v.

Truth E. LUTZ, Defendant–Appellant.

No. 97–3197.

United States Court of Appeals, Sixth Circuit.

Submitted June 19, 1998.

Decided Aug. 28, 1998.

Dennis P. Levin (briefed), Cleveland, Ohio, for Defendant–Appellant.

Ann C. Rowland, U.S. Attorney (briefed), Office of the U.S. Attorney, Organized Crime Strike Force Unit, Cleveland, Ohio, for Plaintiff–Appellee.

Before: MOORE, CLAY, and GILMAN, Circuit Judges.

## OPINION

CLAY, Circuit Judge.

Defendant–Appellant Truth E. Lutz appeals her conviction and sentence for making false statements in a matter within the jurisdiction of a federal agency in violation of 18 U.S.C. § 1001 (1994). For the reasons set forth below, we hereby **AFFIRM** Lutz's conviction and sentence.

### I.

In 1990, Appellant Truth E. Lutz decided to open up her own mortgage brokerage company with a friend, Linda Edens. Lutz and Edens formed TLC Mortgage Specialists, Inc. ("TLC"). Lutz was president of TLC, which was formed for the purpose of originating and processing loans. TLC was a correspondent mortgage broker authorized by the United States Department of Housing and Urban Development ("HUD") to originate loans. HUD at that time offered One to Four–Family Home Mortgage Insurance, which was federal mortgage insurance to finance home ownership. By insuring commercial lenders against loss, HUD encouraged them to invest capital in the home mortgage market. The program was limited to owner-occupants who could meet certain financial requirements. Loan originators, such as Lutz, acted as HUD's agents in processing the HUD-insured loan applications.

HUD policies required that the loan originator meet with the borrower for the purpose of preparing an initial application. At the bottom of the initial application form was a box to check as a means of indicating that the initial application was taken by a face-to-face interview. After taking the initial application, the loan originator was required to verify certain information and then prepare HUD Form 2900, the final application. The loan originator was required to have the borrower sign the form, and then the loan originator was to sign the form as well, certifying that the information about the borrower's personal and financial status had been taken directly from the borrower. The loan originator then would submit the loan package to a lending institution for underwriting. If the lending institution determined that the borrower qualified for the HUD-insured loan based on the information in the package, the package was returned to the loan originator, who then submitted the package to HUD for closing.

Lutz allegedly violated HUD policies by failing to conduct the required face-to-face interviews. She provided application forms to real estate agents who submitted fraudulent documents and verification information, such as W–2's, pay stubs, and social security cards, to Lutz for processing. The agents had their clients sign blank application forms, and Lutz then allegedly completed the signed blank applications with the false information provided by the real estate agents and falsely indicated on them that she had conducted face-to-face interviews with the borrowers. Lutz prepared the Form 2900s with the false information and allegedly only sometimes

met with the borrowers to have them sign the forms, but did not have them verify the information on the forms. Lutz then falsely certified that the personal and financial information on the Form 2900s had been obtained directly from the borrowers.

Lutz was charged in eleven counts of a twenty-four count indictment with violations of 18 U.S.C. § 1001 (1994), making false statements in a matter within the jurisdiction of a federal agency. Her two co-defendants pleaded guilty, and Lutz was tried alone before a jury. At trial, the government's first theory of guilt was based upon Lutz's submission to the lending institutions of the initial application forms wherein she certified that she had held face-to-face interviews with the proposed borrowers. The government's second theory of guilt was that Lutz falsely certified on the Form 2900s that she had obtained the required information on the form directly from the borrower. On October 14, 1996, the jury returned a general verdict of guilt on all eleven counts. On February 21, 1997, Lutz was sentenced to twenty-one months imprisonment and ordered to pay restitution in the amount of $135,209.00.

## II.

### A.

■ The indictment in this case was returned on June 11, 1996. Thus, pursuant to the relevant statute of limitations, 18 U.S.C. § 3282 (1994), which imposes a five-year statute of limitations, the government was required to prove that the offense occurred after June 11, 1991. Lutz argues that the district court erred in denying her motion to dismiss Counts Five, Six, Nine, Ten, Eleven, Twelve, Thirteen, Eighteen, and Twenty-Two on the basis that there was insufficient evidence that the acts constituting the violation of 18 U.S.C. § 1001 under the government's first theory of guilt occurred within the limitations period.

18 U.S.C. § 1001 (1994) provides as follows:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.

The government's first theory of guilt was based upon Lutz's submission to a lending institution of initial application forms which indicated, allegedly falsely, that Lutz certified that she had held a face-to-face interview with the proposed borrowers. With respect to the above-mentioned counts, the initial application forms were dated prior to June 11, 1991, and Lutz asserts that there was no evidence presented at trial as to when these forms were submitted to the lending institution. Because Lutz maintains that the crime was completed when she submitted the loan applications to the lender, she argues that the five-year statute of limitations had run by the time of the indictment on June 11, 1996.

■ The statute of limitations begins to run when the crime is complete. *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 25 L.Ed.2d 156 (1970). A crime is complete when each element of the crime has occurred. *United States v. Smith*, 740 F.2d 734, 736 (9th Cir.1984). In the *Smith* case, on which both parties rely, the Ninth Circuit held that in offenses involving the submission of false statements to the government in violation of 18 U.S.C. § 1001, the offense is complete when the false statement is submitted. *Id.* Lutz claims that this means that her crime was complete when she submitted the initial application forms to the lender. However, no offense has occurred under the statute unless a false statement is made regarding a matter within the jurisdiction of a federal agency. *See id.* at 737. A matter is within the jurisdiction of a federal agency for purposes of § 1001 when the agency has the power to exercise authority in a particular situation. *United States v. Rodgers*, 466 U.S. 475, 479, 104 S.Ct. 1942, 80 L.Ed.2d 492 (1984). At the time Lutz submitted the forms to the lending institution certifying that she had held face-to-face interviews,

HUD did not yet have jurisdiction because the final loan application package had not yet been submitted to it. Furthermore, HUD had no authority over the lending institution at this point with regard to whether or not the institution would accept the loan. Therefore, the matter was not within HUD's jurisdiction, and thus the crime was not complete. Because all of the final loan packages were submitted to HUD after June 11, 1991, Lutz's indictment was not barred by the statute of limitations.

 Alternatively, Lutz argues that if the statute of limitations does not bar the prosecution of these counts, then prosecution is barred on the basis that there is insufficient evidence that a crime has been committed because the forms containing the face-to-face interview certification were not included in the final loan package or otherwise ever submitted to HUD. Lutz asserts that since these initial application forms were never submitted to HUD, no crime has been committed that would permit a finding of guilt under the government's first theory.[1]

 Lutz misconstrues, however, what is required for a conviction under § 1001. "There is no implicit requirement that the [false] statements be made directly to, or even be received by, the federal department or agency." *United States v. Gibson*, 881 F.2d 318, 322 (6th Cir.1989) (involving false statements made to a private mining company under contract with the TVA). False statements made in any matter within the agency's jurisdiction are within the scope of § 1001, and courts have upheld § 1001 convictions for false statements made to private entities receiving federal funds or subject to federal regulation or supervision. *See id.*

HUD had supervisory authority over the lending institution with regard to the loans at issue. HUD had various requirements and rules that the lending institutions and loan originators were expected to comply with in accepting loans for the program, including the requirement that face-to-face interviews

occur. When Lutz submitted the final loan packages to HUD, which were approved by the lending institution in part on the basis of the false certification, this was sufficient to constitute a false statement in violation of § 1001. *Cf. United States v. Lewis*, 587 F.2d 854, 856 (6th Cir.1978) (finding that benefits applicant who falsified eligibility information given to a state agency was within jurisdiction of the federal agency because her actions directly affected the right of the state to participate in the federal program).

### B.

 When a defendant challenges her conviction on the basis of insufficient evidence, this court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Atkin*, 107 F.3d 1213, 1218 (6th Cir.1997) (internal quotations and citation omitted). A violation of § 1001 is comprised of five elements: (1) the defendant made a statement; (2) the statement is false or fraudulent; (3) the statement is material; (4) the defendant made the statement knowingly and willfully; and (5) the statement pertained to an activity within the jurisdiction of a federal agency. *United States v. Steele*, 933 F.2d 1313, 1318–19 (6th Cir. 1991).

Lutz asserts three bases for finding an insufficiency of evidence. First, Lutz reiterates her argument, disposed of above, that no crime was committed under the government's first theory because the face-to-face certification forms were never submitted to HUD. However, as already explained, the false statement does not have to be made to the federal agency to constitute a violation of § 1001. *See United States v. Davis*, 8 F.3d 923, 929 (2d Cir.1993); *United States v. Gibson*, 881 F.2d 318, 322 (6th Cir.1989).

---

1. If the government's first theory were found to be an invalid basis of conviction, this would mandate a complete reversal of the counts because two theories were submitted and, since the jury's verdict was a general one, there is no way

of determining if the jury's verdict was based on the permissible theory or the impermissible theory. *See United States v. Palazzolo*, 71 F.3d 1233, 1236–38 (6th Cir.1995).

 Second, Lutz contends that even if she did not conduct a face-to-face interview and improperly checked and certified that one was held on the initial loan application form, this does not constitute a crime because any such statement contained on the form is not "material." A statement is material for purposes of 18 U.S.C. § 1001 if it has the natural tendency to influence or is capable of influencing the federal agency. *United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995); *Steele,* 933 F.2d at 1319. It is not necessary to show that the statement actually influenced an agency, but only that it had the capacity to do so. *United States v. Blandford,* 33 F.3d 685, 705 (6th Cir.1994).

Lutz argues that the certification on the initial application forms could not be material or have the potential to influence HUD because the form is not part of HUD's final loan package and generally is not received by HUD. However, the government presented evidence that one of the reasons HUD requires lending institutions and loan originators to conduct a face-to-face interview with the borrower is so that the borrower's identity can be verified and a more complete financial picture of the applicant can be obtained. HUD relies on the lender having obtained all of the required information at the initial application stages. Even if HUD does not rely on the certification statement directly, the statement still is material because it has a natural tendency to influence. *See United States v. Keefer,* 799 F.2d 1115, 1126 (6th Cir.1986). Therefore, the government was not required to show that the form itself went to HUD in order to establish that the false information on the form was material.

 Third, Lutz contends that there was insufficient evidence to convict under the government's second theory of guilt—that Lutz did not obtain the information on Form 2900 directly from the borrower—because Lutz substantially complied with the requirements, and because the requirements are impermissibly vague.

The government's second theory of guilt was that Lutz violated § 1001 by signing Form 2900 with regard to each loan, certifying that information about the borrower's

personal and financial status had been obtained "directly from the borrower." Lutz argues that, although the certification on Form 2900 claims to require that the information be obtained directly from the borrower, much of the information on the form requires verification from sources other than the borrower. Lutz further claims that some of the information from the relevant section is not even taken into account by HUD when determining the borrower's eligibility.

Each Form 2900 contained a certification, signed by Lutz, stating:

> The undersigned lender makes the following certifications to induce ... the Department of Housing and Urban Development—Federal Housing Commissioner to issue a firm commitment for mortgage insurance under the National Housing Act.
>
> \* \* \* \* \* \*
>
> 26B. The information furnished in Section II was obtained directly from the borrower by a full-time employee of the undersigned lender ... and is true to the best of the lender's knowledge and belief.

(J.A. at 413.)

Although Lutz is correct that much of the information on the form requires outside verification, many of the items pertain to personal information that would have to be provided by the borrower (*e.g.,* marital status, age, dependents, and monthly support obligations). Furthermore, the fact that outside verification is required for items such as employment and financial information does not mean that Lutz was not required to confirm the information with the borrower as well. As to the issue of the vagueness of the form, "directly from the borrower" plainly means that Lutz could not rely on information obtained from an intermediary, such as the real estate agents. In addition, Lutz had received HUD's mortgagee handbook, which stated that a face-to-face interview had to be conducted whenever a Form 2900 was signed. Accordingly, the evidence presented at trial from borrowers who stated that they had not met Lutz, nor provided information directly to her, as well as the evidence regarding Lutz's knowledge of what was required to be done in filling out the forms, was

sufficient to support a verdict of guilt under the government's second theory.

### C.

■ Lutz contends that, even if there was sufficient evidence to support her conviction, the district court erred in denying her motion for a new trial based on the verdict being against the manifest weight of the evidence.[2] A reversal based on the verdict being against the manifest weight of the evidence is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence. *See Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). When considering a motion for new trial based upon the weight of the evidence, district judges can act in the role of a "thirteenth juror" and consider the credibility of the witnesses and the weight of the evidence to insure that there is not a miscarriage of justice. *United States v. Ashworth,* 836 F.2d 260, 266 (6th Cir.1988). The role of the court of appeals, however, is not to sit as a "thirteenth juror" and re-weigh the evidence, but to examine the evidence to determine whether the district court's ruling that the verdict is not against the manifest weight of the evidence was "a clear and manifest abuse of discretion." *Id.*

Lutz primarily argues that the verdict is against the weight of the evidence based upon the credibility of various witnesses and certain conflicts in testimony. However, Lutz has pointed to no specific problems or conflicts so egregious or extraordinary that would warrant a finding that the district court committed a "clear and manifest" abuse of its discretion in denying her motion.

### D.

■ With regard to her sentencing, Lutz asserts that the district court erred in refusing to grant her a two-level reduction for acceptance of responsibility. Under § 3E1.1 of the Sentencing Guidelines, a defendant may qualify for a reduction in her offense level if she clearly demonstrates acceptance of responsibility for her offense. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 3E1.1(a) (1995). A district court's finding regarding acceptance of responsibility is a finding of fact, which is reviewed under a clearly erroneous standard. *United States v. Bonds,* 48 F.3d 184, 187 (6th Cir.1995). The district court's ruling is entitled to great deference and "should not be disturbed unless it is without foundation." *United States v. Berridge,* 74 F.3d 113, 116 (6th Cir.1996).

■ Lutz claims that a statement she submitted to the probation department indicated her remorse for her actions and warranted a two-level reduction for acceptance of responsibility. Although Lutz's letter does state that she is sorry for what happened and accepts responsibility for her actions, Lutz steadfastly maintains in the letter that she did not intend to engage in criminal activity and did not realize that her actions were unlawful at the time. An admission of regret for the result of criminal actions without a corresponding admission of criminal intent does not constitute acceptance of responsibility within the context of the Sentencing Guidelines. *United States v. Williams,* 940 F.2d 176, 183 (6th Cir.1991). Accordingly, the district court did not clearly err in finding that Lutz was not entitled to a reduction for acceptance of responsibility.

### E.

■ Lutz contends that she was entitled to a downward departure from the Sentencing Guidelines on the basis that her wrongful actions constituted aberrant behavior. *See United States v. Duerson,* 25 F.3d 376, 380 (6th Cir.1994) ("a district court can give a first offender a prison sentence below the guideline range ... where the facts justify a finding that his crime truly was a single act of aberrant behavior"). The decision of a district judge not to make a downward departure ordinarily is not appealable. *United*

---

**2.** It is not entirely clear from the record that Lutz specifically made a motion for a new trial based on the verdict being against the manifest weight of the evidence. The failure to do so would bar appeal on this ground. *See Dixon v. Montgomery Ward,* 783 F.2d 55, 55 (6th Cir.1986). Nonetheless, because the outcome will be unaffected, the issue will be addressed.

*States v. Byrd,* 53 F.3d 144, 145 (6th Cir. 1995). If the district court was aware of its discretion to depart from the Sentencing Guidelines, and the sentence imposed was not in violation of law or as a result of an incorrect application of the Sentencing Guidelines, the failure to depart is not cognizable on appeal. *Id.* To determine whether the decision not to depart was discretionary or based upon a determination that there was no authority to depart, the court of appeals looks to the sentencing hearing transcript. *United States v. Ebolum,* 72 F.3d 35, 37 (6th Cir.1995).

Nothing in the transcript of Lutz's sentencing hearing indicates that the district court thought it lacked the authority to make a downward departure. Lutz claims that the district court improperly interpreted the aberrant behavior definition as requiring the conduct to be a single action. Regardless of whether this is true, the transcript clearly indicates that the district court was aware that it could depart but decided against it. Accordingly, this issue is not reviewable on appeal.

### F.

 Lutz challenges the district court's calculation of the loss as in excess of $200,000, which resulted in an increase in Lutz's offense level by eight points pursuant to U.S.S.G. § 2F1.1(b)(1)(I). Lutz contends that when the government retook possession of the real estate in this case, it voluntarily resold it for, on the average, only 60 percent of the actual value of the property. Lutz contends that she should receive credit for the value of the property as of the date the property was taken into possession of the government.

 In determining the loss for sentencing purposes, a district court need only make a reasonable estimate of the loss, and this court reviews for clear error and reverses the valuation only if it is outside the realm of permissible computations. *United States v. Cobleigh,* 75 F.3d 242, 250 (6th Cir.1996). The loss in a fraudulent loan application case is the amount of the loan not repaid, reduced by the amount the lending institution has recovered from any assets pledged to secure the loan. *United States v. Lucas,* 99 F.3d 1290, 1296–97 (6th Cir.1996). The district court determined this amount based upon the trial testimony of a HUD asset manager who testified as to the costs HUD incurred in taking over the properties, paying the claims of the lenders, maintaining and repairing the properties, and reselling them. This calculation was not clearly erroneous. As to Lutz's claim that HUD deliberately did not recover as much on the resale of the properties as it could have, this allegation is unsupported and would not, in any event, prevent the district court from attributing the entire amount of loss to Lutz. *See United States v. Miller,* 962 F.2d 739, 744 (7th Cir.1992) ("victim's failure to mitigate ... does not prevent attributing to the defendants the full of amount of loss"). Accordingly, the district court's valuation of loss was not outside the realm of permissible calculations.

### G.

 Lutz contends that the district court erred in enhancing her sentencing level by two points for engaging in "more than minimal planning" pursuant to U.S.S.G. § 2F1.1(b)(2)(A). The trial court's finding of more than minimal planning is reviewed for clear error. *United States v. Ellerbee,* 73 F.3d 105, 107 (6th Cir.1996). The Sentencing Guidelines set forth three circumstances where enhancement for more than minimal planning is appropriate: (1) cases where more planning occurs than is typical for commission of the offense in a simple form; (2) cases involving significant affirmative steps to conceal; and (3) cases involving repeated acts over a period of time, unless each instance was purely opportune. *See United States v. Ivery,* 999 F.2d 1043, 1046 (6th Cir.1993) (citing U.S.S.G. § 1B1.1, application note 1(f)). Lutz submitted false information with regard to loan applications on at least eleven different occasions. There is no indication that any of these actions were the result of spur of the moment conduct such as would warrant a finding that the conduct was purely opportune. Accordingly, the district court did not clearly err in applying an enhancement for more than minimal planning.

## III.

For the reasons set forth above, we hereby **AFFIRM** Appellant Truth E. Lutz's conviction and sentence.