**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Phillip Dion SLONE, Defendant–**
**Appellant.**

**No. 00–6591.**

United States Court of Appeals,
Sixth Circuit.

March 29, 2002.

Before NORRIS and CLAY, Circuit Judges; and SARGUS, District Judge.*

CLAY, Circuit Judge.

Defendant Phillip Dion Slone appeals from the district court's judgment entered on a jury verdict convicting him of conspiracy to commit voter fraud in a federal election in violation of 18 U.S.C. § 371. Specifically, Defendant argues that the district court erred when it denied his motion for a judgment of acquittal, or in the alternative a motion for a new trial, because there was insufficient evidence for the jury's guilty verdict and because its verdict was against the great weight of the evidence. We **AFFIRM** the district court's judgment.

## BACKGROUND

A grand jury returned a fifteen-count indictment against Defendant, Phillip Darrell Sparkman, Lola Jean Slone, Charlie Maggard, and Milburn Losses Jacobs charging them with voter fraud in connection with the May 26, 1998 primary elec-

---

* The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District of Ohio, sitting by designation.

tion in Knott County, Kentucky. All were charged with one count of conspiring to commit the crime of knowingly and wilfully paying and offering to pay voters in violation of 18 U.S.C. § 371. The indictment also charged Defendant and Sparkman in Counts 11 and 12 with paying, offering to pay, and causing another to pay and to offer to pay two voters for voting in the primary election in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2. In addition, Sparkman, Lola Jean Slone, Maggard and Jacobs were charged with other counts of buying votes in violation of 42 U.S.C. § 1973i(c). Sparkman and Lola Jean Slone were also charged with lying to an FBI agent about their involvement in the election fraud in violation of 18 U.S.C. § 1001.

After a six-day jury trial in which Defendant was jointly tried with his co-defendants, Sparkman was convicted of the conspiracy charge, twelve counts of violating 42 U.S.C. § 1973i(c) and 18 U.S.C. § 2, and one count of lying to the FBI in violation of 18 U.S.C. § 1001. The jury also convicted Lola Jean Slone of conspiracy, six counts of vote buying and one count of making a false statement to the FBI in violation of 18 U.S.C. § 1001. Maggard was convicted of the conspiracy charge and two counts of vote buying. However, the jury was unable to reach a verdict as to Defendant and Jacobs, and a mistrial was granted as to both. On the government's motion, the district court dismissed the counts against Jacobs.

Defendant's retrial began on June 26 and concluded on June 28, 2000. Testimony at the retrial established that the conspiracy started at the Carney Creek Elementary School in Pippa Passes in Knott County, Kentucky when Sparkman, a teacher at the school, sought to recruit students at the nearby Alice Lloyd College to register out-of-county students to vote

by absentee ballot in the May 26, 1998 primary election with the promise that they would be paid if they voted. Candidates for the United States Congress were on the ballot, along with candidates for various county positions, including county judge executive, attorney and jailer. From a total of 12,500 to 13,000 registered voters, 1,020 absentee ballots were cast in what was called "a hotly contested election."

Sparkman was interested in several local races, particularly the race involving Defendant's brother, Randy Slone, for the office of county attorney. The principal testimony was provided by Joey Dean Caudill, a resident of Knott County and a student at Alice Lloyd College. Caudill, who knew Sparkman, testified that he was observing Sparkman's class as part of a requirement for an education course at Alice Lloyd College to observe a teacher for 20 hours when he agreed to help Sparkman in his election scheme in exchange for not having to observe Sparkman's teaching. Sparkman gave Caudill blank voter registration cards and asked him to register students at Alice Lloyd College and to return the cards to Sparkman. Sparkman also solicited Stephanie Dawn Edwards, another student at Alice Lloyd College, to participate in the scheme. Sparkman told both Caudill and Edwards that the registered students would be paid to vote.

Caudill testified that he registered approximately twenty students and told them that they would be paid for their votes. In this endeavor, Caudill also obtained the assistance of his roommate, Justin Amburgey. After Caudill registered the students to vote, Sparkman sent him to Defendant sometime before May 7. According to Caudill, he went to Defendant's house where they discussed "helping Darrell [Sparkman] and them all out with the election."

At Sparkman's direction, Caudill also went to Charlie Maggard, who gave him "some money for helping him out in the election." After the polls opened for voting by absentee ballot on May 12, 1998, Sparkman gave Caudill a list of candidates and instructed him to have the registered students vote for these candidates. After the students voted, Sparkman told Caudill to take them to Slone's Market in Pippa Passes, Kentucky.[1] Upon presenting "I voted" stickers with the purchase of a peach Mr. Fizz soda, the students were to be paid $25 to $30 by someone in the store. Caudill testified that he took several students to vote, and then to Slone's Market as directed, where they were paid as promised.

Caudill testified that, at Sparkman's direction, he took Gary Fannin and Micah Stallard, two Alice Lloyd College students, to the Knott County Courthouse to vote by absentee ballot. After Fannin and Stallard voted, Caudill drove them to Slone's Market. Although Fannin and Stallard displayed their "I voted' stickers upon the purchase of a peach Mr. Fizz soda, they were not paid. Caudill then took the two students to see Sparkman, who told them to see Maggard about obtaining their money. Because Maggard was not at home, Caudill and the two students returned to talk with Sparkman, who then told Caudill "to go down and see Dion Slone." Caudill, who knew Defendant, testified that they were going to see Defendant "to get the money." However, Defendant was not at home when Caudill and the two students went to his house.

Caudill testified that on the late afternoon or early evening of the following day, May 13, he and Fannin returned to Defendant's house. After parking his car in Slone's Market, Caudill walked to Defendant's house, about "a couple hundred feet" from the market, but he could not

remember whether Fannin accompanied him. After Caudill told Defendant that he had taken a "couple of guys to vote and they didn't get their money," Defendant gave him "some money." According to Caudill, he gave each of the two students "30 a piece" and had about "40 or 50 left over" for himself. On cross-examination, Caudill acknowledged that when he was first interviewed by an FBI agent on September 21, 1998, he told the agent that he went with Stallard, Fannin and Amburgey, to Defendant's house on the day that they were paid. Caudill further acknowledged on cross-examination that Sparkman was also present at Defendant's residence when he went there for the payment.

Fannin also provided testimony about the payment of money that occurred at Defendant's residence on May 13, 1998. According to Fannin, he and Caudill went back to Slone's Market where they parked their car and then "walked down to the little house on the right." However, Fannin, who did know Defendant, testified that the man who paid Caudill was Sparkman, not Defendant.

At the close of the government's case, Defendant moved for a judgment of acquittal, which the district court denied on June 28, 2000. Thereafter, the jury found Defendant guilty of Count 1, conspiracy for knowingly and willfully paying voters for voting in the May 26, 1998 primary election, but acquitted him of Counts 11 and 12 for knowingly, willfully, and unlawfully paying, offering to pay and causing another to pay voters for voting in the primary election.

On July 5, 2000 Defendant filed a motion for judgment of acquittal as to Count 1, or in the alternative a motion for a new trial. The district court denied both motions in

---

1. The proprietor of Slone's Market is not related to Defendant.

an order entered on August 3, 2000. Defendant was then sentenced on November 8, 2000 to three years' probation, ordered to serve one month in a halfway house, five months in home detention and fined $1,000.

## DISCUSSION

### Standard of Review

This Court reviews the denial of a motion for acquittal *de novo*. *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir.1990). In considering a motion for acquittal, the trial court must view the evidence and the inferences therefrom in the light most favorable to the government to determine whether "any rational trier of fact could have found the essential elements of the crime" of which Defendant was convicted "beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In deciding a motion for a new trial, the district court sits as a thirteenth juror and considers the weight of the evidence and the credibility of the witnesses to insure that no miscarriage of justice has occurred. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir.1998). The function of this Court "is not to sit as a "thirteenth juror" and reweigh the evidence," but to review the trial court's ruling to determine whether there was "a clear and manifest abuse of discretion." *Id.*

### Analysis

 The district court properly denied Defendant's motion for a judgment of acquittal because there was sufficient evidence for the jury to convict him of conspiring to buy votes in a federal election. 18 U.S.C. § 371 provides in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any

manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 371. To prove a violation of 18 U.S.C. § 371, the government has to establish the following essential elements: (1) that the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one of the overt acts charged in the indictment, at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged....

"The existence of a criminal conspiracy need not be proven by direct evidence, a common plan may be inferred from circumstantial evidence." ... Circumstantial evidence standing alone can sustain the jury's verdict, and such circumstantial evidence need not remove every reasonable possibility except that of guilt....

Moreover, once the existence of a conspiracy has been proven, only slight evidence is necessary to implicate a defendant.... Further, proof of a formal agreement among the conspirators is unnecessary; a tacit or mutual understanding among the parties is sufficient to show a conspiracy.... In addition, "[e]very member of the conspiracy need not be an active participant in every phase of the conspiracy, so long as he is a party to the general conspiratorial agreement."

*United States v. Lee*, 991 F.2d 343, 347–48 (6th Cir.1993) (citations omitted).

Viewing the evidence in the light most favorable to the government, there was

sufficient evidence to convict Defendant of 18 U.S.C. § 371. As the government points out, the existence of a conspiracy to pay Alice Lloyd College students to vote by absentee ballot in the May 26, 1998 primary election in Knott County is undisputed. The only issue is whether Defendant willfully participated in the conspiracy. Here, Caudill gave testimony that Sparkman told him to go to Defendant for the money to pay the student voters and that Defendant gave him money to pay the two student voters for voting by absentee ballot in the primary election. This evidence is sufficient for the jury to convict Defendant of conspiracy in violation of 18 U.S.C. § 371. Although Fannin testified that it was Sparkman, not Defendant, who gave Caudill the money to pay the student voters, it was up to the jury to resolve the discrepancy in the testimony of these two witnesses. *See United States v. Talley,* 164 F.3d 989, 996 (6th Cir.1999) ("[I]t is well-settled that on appeal, there 'is no place ... for arguments regarding a government witness's lack of credibility' .... Indeed, '[i]t is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.' ")

■ The district court also did not abuse its discretion in denying Defendant's motion for a new trial on the basis that the verdict was against the manifest weight of the evidence. Although Defendant challenges Caudill's credibility, and claims that there are inconsistencies in his testimony and that of Fannin, such inconsistencies do not show that the district court committed a clear and manifest abuse of discretion in denying his motion for a new trial. This case is similar to *Lutz,* 154 F.3d at 589, where the defendant only complained about credibility and "pointed to no specific problems or conflicts so egregious or extraordinary that would warrant a finding

that the district court committed a 'clear and manifest' abuse of its discretion in denying her motion." 154 F.3d at 589. As the government points out, the district court heard the evidence at the first trial and Defendant's retrial, weighed the credibility of the witnesses in ruling on Defendant's motion for a new trial, and found no miscarriage of justice in the jury verdict.

## CONCLUSION

The district court properly denied Defendant's motion for a judgment of acquittal because there was sufficient evidence for the jury to convict him of conspiring to buy votes in a federal election and because the jury's verdict was not against the manifest weight of the evidence. Accordingly, we **AFFIRM** the district court's judgment.