**UNITED STATES of America,**
**Plaintiff,**

v.

**Brent McKINNEY, Defendant.**

**Case No. 13–20182.**

United States District Court,
E.D. Michigan,
Southern Division.

Signed March 12, 2014.

Anjali Prasad, U.S. Attorney's Office, Detroit, MI, for Plaintiff.

George B. Donnini, Butzel Long, Detroit, MI, for Defendant.

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

DAVID M. LAWSON, District Judge.

Defendant Brent McKinney was convicted by a jury of (1) conspiracy to manufacture methamphetamine; (2) conspiracy to manufacture methamphetamine on a premises where a child is present; (3) maintaining a drug-involved premises; (4) endangering life while manufacturing methamphetamine; and (5) unlawful possession of material or equipment used to manufacture methamphetamine. Presently before the Court is his renewed motion for judgment of acquittal under Federal Rule of Criminal Procedure 29(c), in which he argues that the government did not offer sufficient evidence to convict him of the various crimes, and his convictions of both conspiracy to manufacture methamphetamine *and* conspiracy to manufacture methamphetamine where a child is present violates the Fifth Amendment's Double Jeopardy Clause. McKinney also argues that the cooperating witnesses were inherently unbelievable and moves for a new trial on all counts under Rule 33(a). The Court heard oral argument from the parties on February 20, 2014, and now determines that the motion must be denied.

## I.

The facts of the case are well known to the parties. At trial, witnesses testified that McKinney resided in a bedroom located in the basement of a house in Port Huron, Michigan owned by Robert Folliard and Amber King. Folliard and King lived on the first and second floors of that house with Folliard's six-year-old daughter. They had been charged as co-defendants with McKinney, but they pleaded

guilty and testified against McKinney at trial. Together with other witnesses—also former co-defendants—they testified that they purchased pseudoephedrine at McKinney's request and furnished it to him as an ingredient for the methamphetamine he manufactured in the basement of Folliard's home. The manufacturing operation was discovered when a federal drug task force searched the home with a search warrant obtained on the strength of a tip from an informant.

The grand jury charged McKinney with the crimes listed above, in addition to possessing a firearm during and in relation to a drug trafficking crime. The trial jury acquitted him of that charge. Also at trial, the cooperating witnesses described the leniency agreements they made with the government and were subject to cross-examination about them.

The defendant contends that the verdict on each of the counts of conviction is defective. The Court will address each of his arguments in turn.

## II.

When deciding a motion for judgment of acquittal under Rule 29(c), the Court must view the evidence in the light most favorable to the prosecution and determine whether there was sufficient evidence offered at trial to convince a rational trier of fact beyond a reasonable doubt that all of the elements of the charged crimes had been established. *United States v. Graham,* 622 F.3d 445, 448 (6th Cir.2010); *see also Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). "The relevant question in assessing a challenge to the sufficiency of the evidence is whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v.*

*McAuliffe,* 490 F.3d 526, 537 (6th Cir. 2007); *see also Jackson,* 443 U.S. at 318, 99 S.Ct. 2781. The evidence need not exclude every theory of innocence. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781. The testimony of a single witness is generally sufficient to demonstrate guilt beyond a reasonable doubt. "The prosecution, however, must present substantial evidence as to each element of the offense from which a jury could find the accused guilty beyond a reasonable doubt." *Brown v. Davis,* 752 F.2d 1142, 1145 (6th Cir.1985) (internal citation omitted).

■ "Substantial evidence is more than a scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion. It is evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred." *United States v. Martin,* 375 F.2d 956, 957 (6th Cir.1967). But where the evidence is at least as indicative of innocence as guilt, the Court must direct a verdict of acquittal. *United States v. Berger,* 224 F.3d 107, 116 (2d Cir.2000).

■ "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R. Crim.P. 33(a). "The decision whether to grant a new trial is left to the sound discretion of the district court." *United States v. Pierce,* 62 F.3d 818, 823 (6th Cir.1995). "A reversal based on the verdict being against the manifest weight of the evidence is proper when the government has presented sufficient evidence to convict, but the judge disagrees with the jury's resolution of conflicting evidence." *United States v. Lutz,* 154 F.3d 581, 589 (6th Cir.1998). "A district judge, in considering the weight of the evidence for purposes of adjudicating a motion for new trial, may act as a thirteenth juror, assessing the credibility of witnesses and the weight of the evidence." *United*

*States v. Hughes,* 505 F.3d 578, 593 (6th Cir.2007) (quoting *Lutz,* 154 F.3d at 589). Moreover, "it is widely agreed that Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz,* 605 F.3d 359, 373 (6th Cir.2010) (collecting cases).

### A. Conspiracy Counts (Counts I and II)

■ The Court has little difficulty finding sufficient evidence to support the jury's verdicts on these two conspiracy counts. "To sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must have proved: (1) an agreement to violate drug laws, in this case 21 U.S.C. § 841; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Sliwo,* 620 F.3d 630, 633 (6th Cir.2010) (quoting *United States v. Deitz,* 577 F.3d 672, 677 (6th Cir.2009)). McKinney concedes that the evidence was sufficient to establish that a conspiracy existed, and he has offered nothing to suggest that the testimony establishing that he knew of and participated in the conspiracy was insufficient.

■ Instead, McKinney urges the Court to stand in the shoes of a "thirteenth juror" and to upset the jury's verdict on the basis of its own resolution of "conflicting evidence." But he has not pointed to any conflicting evidence on the elements of the offense, and in fact he cites no evidence at all that contradicts the unrebutted testimony by the cooperating witnesses that he employed them to purchase pseudoephedrine for the purpose of making methamphetamine, used the ingredients they obtained to make the drug, and did so repeatedly over a six-month period. The testimony of three witnesses with personal knowledge of their dealings with McKinney is unquestionably sufficient to support a finding by the jury that the defendant

agreed with them to participate in a scheme through which they bought pseudoephedrine and supplied it to him for use in making methamphetamine. As the government points out, McKinney had a full opportunity at trial to explore the testimonial inconsistencies McKinney cited as to certain immaterial details (none of which have any relation to the defendant's knowledge of or participation in the conspiracy), and the jury nevertheless found those witnesses credible.

McKinney's better argument is that conviction of the two conspiracy charges, which arise from the same conduct, subjects him to double jeopardy. But unfortunately for him, it is not a winning argument.

The only elemental difference between the crimes charged in Count I and Count II of the indictment is the addition of a single element: that the methamphetamine was manufactured "on premises in which an individual who is under the age of 18 years is present or resides." 21 U.S.C. § 860a. McKinney argues that the conspiracy charged in Count I was subsumed within the conspiracy charged in Count II. It is sensible, he says, to view Count I as a lesser offense of Count II. But if that is true, charging both crimes rendered the indictment multiplicitous, and convictions of both violate the Double Jeopardy Clause.

■■■ The government responds first with the contention that the defendant waived his multiplicity argument by not filing a pretrial motion attacking the indictment under Federal Rule of Criminal Procedure 12(b)(3)(B). That argument is not persuasive. Although "a motion alleging a defect in the indictment must be made before trial," *United States v. Kakos,* 483 F.3d 441, 444 (6th Cir.2007), where a defective indictment affects a defendant's substantive rights, the challenge "can be raised at trial or on appeal, notwithstanding the defendant's failure to make a pretrial motion," *ibid.*

The government then turns to *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and insists that the relevant inquiry is "whether each provision requires proof of a fact which the other does not." *Id.* at 304, 52 S.Ct. 180. But that reference does not answer the question here. As noted above, the crime charged in Count II requires an additional element, but if the crime charged in Count I is merely a lesser offense of the crime charged in Count II, the defendant cannot be convicted of both. *See United States v. Ehle,* 640 F.3d 689, 694–95 (6th Cir.2011).

■■■ The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. "The prohibition against double jeopardy protects individuals not only from successive trials, but also prohibits multiple punishments for the same offense." *United States v. DeCarlo,* 434 F.3d 447, 454 (6th Cir.2006) (citing *Witte v. United States,* 515 U.S. 389, 391, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995); *Hampton v. Hobbs,* 106 F.3d 1281, 1288 (6th Cir.1997)). However, "a single transaction can give rise to distinct offenses under separate statutes without violating the Double Jeopardy Clause.'" *Ibid.* (quoting *Albernaz v. United States,* 450 U.S. 333, 344 n. 3, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)). There is no dispute that the same conduct formed the basis for the convictions in both Count I and Count II. The question here is whether those offenses were the "same," or "distinct."

■■■ Only Congress can provide the answer to that question. *DeCarlo,* 434 F.3d at 454 (noting that "[t]he first step in deciding whether one act can give rise to

more than one conviction under separate statutes, or separate sections of the same statute, is to determine "whether Congress intended to punish each statutory violation separately" (quoting *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir. 1980)))." Congressional intent is discerned first by looking to the text of the statute. *Pandelli v. United States*, 635 F.2d at 536. But there is a presumption that applies: "we presume that where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." *Rutledge v. United States*, 517 U.S. 292, 297, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). "If Congress so intended, that intent must be clearly expressed." *DeCarlo*, 434 F.3d at 454.

■■■ Both Counts I and II charged a violation of 21 U.S.C. § 841(a)(1)—which prohibits "knowingly or intentionally ... manufactur[ing] ... a controlled substance"—and 21 U.S.C. § 846, which punishes conspiracies to violate the controlled substance laws. Count II also alleged a violation of 21 U.S.C. § 860a, which states:

> Whoever violates section 841(a)(1) of this title by manufacturing or distributing, or possessing with intent to manufacture or distribute, methamphetamine or its salts, isomers or salts of isomers on premises in which an individual who is under the age of 18 years is present or resides, shall, in addition to any other sentence imposed, be imprisoned for a period of any term of years but not more than 20 years, subject to a fine, or both.

It is plain that one cannot violate section 860a without also violating section 841(a)(1) by the same conduct. However, the text of the statute makes clear that Congress intended to define a separate crime in section 860a that carries a discrete punishment "in addition to any other

sentence imposed." 21 U.S.C. § 860a. Because that intent is clearly expressed, the Court need not engage in *Blockburger*'s elemental analysis. *See DeCarlo*, 434 F.3d at 455 (noting that the *Blockburger* analysis need not be used unless "congressional intent is not expressed or cannot be discerned by other methods of statutory construction").

Congress criminalized the manufacture of methamphetamine in section 841(a)(1). Congress also established a distinct crime with a separate *and additional* punishment in section 860a when that manufacturing takes place on premises where a minor child is present or resides. The text and structure of section 860a is very similar to that of 18 U.S.C. § 924(c), which defines a separate crime with additional penalties when one commits a drug trafficking offense or a crime of violence while using a gun. The Sixth Circuit has held that convictions of both the underlying felony and the section 924(c) violation do not violate the Double Jeopardy Clause, even though " '[t]he underlying crime of violence ... [on] which a section 924(c) conviction is, by definition, based will never require proof of any fact for which section 924(c) itself does not require proof.' " *United States v. Davis*, 306 F.3d 398, 418 (6th Cir.2002) (quoting *United States v. Gibbons*, 994 F.2d 299, 302 (6th Cir.1993)). The court reasoned that "[b]ecause Congress expressly provided that courts may impose punishment for a violation of § 924(c) in addition to the punishment imposed for the predicate felony, Defendant's double jeopardy arguments lack merit." *Ibid.* (citing *United States v. Moore*, 917 F.2d 215, 229–30 (6th Cir.1990)).

When enacting 21 U.S.C. § 860a, Congress used language nearly identical to that in section 924(c); it prescribed that any person who "violates section 841(a)(1) of this title by manufacturing ... meth-

amphetamine ... on premises in which an individual who is under the age of 18 years is present or resides, shall, *in addition to any other sentence imposed,* be imprisoned for a period of any term of years but not more than 20 years, subject to a fine, or both." 21 U.S.C. § 860a (emphasis added). The plain text indicates that Congress expressly intended to impose a separate punishment under section 860a cumulative to any penalty imposed for the underlying violation of another section in Title 21.

McKinney argues that the Court should vacate one or the other conviction, because sustaining the convictions on both Counts I and II violates the Double Jeopardy Clause. But based on the analysis in *Davis,* vacating the conviction on either count in this case would frustrate the plainly stated legislative intent, because (assuming count I was vacated) there would no longer be any underlying punishment for the sentence on count II to be imposed "in addition to." Because the statute expressly contemplates that punishment under section 860a will be imposed "in addition to" some other punishment for the underlying violation, there could never be a case where both punishments are "imposed," unless both convictions are retained.

One might be tempted to look for guidance in the Sixth Circuit's decision in *United States v. Jones,* 489 F.3d 243 (6th Cir. 2007), in which the court held that the crime of manufacturing or distributing a controlled substance "in or on, or within one thousand feet of" a school, proscribed by 21 U.S.C. § 860, is a lesser offense of manufacturing or distributing a controlled substance defined by 21 U.S.C. § 841(a)(1). *Id.* at 254. However, the two statutes— section 860 and section 860a—do not read the same. Section 860 doubles the penalties for "[a]ny person who violates section

841(a)(1) of this title ... by distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within one thousand feet of" a school. But that statute does not contain the crucial words "in addition to any other punishment imposed" found in section 860a. It does not, therefore, define a separate crime, but instead enhances the penalties prescribed by section 841 when the aggravating conduct has been proved. Because section 860 imposes a complete and free-standing replacement penalty equal to twice that applicable for the "lesser included" offense, *Jones,* 489 F.3d at 254, there is no such plain indication in the statute's language that Congress intended to impose separate and cumulative punishments under both sections. In contrast, the text and structure of section 860a reveal a different regime, which creates two distinct crimes carrying two distinct penalties that can stem from the same conduct.

Because Congress intended multiple punishments, Counts I and II of the indictment are not multiplicitous, and convictions and punishments on both counts do not violate the Double Jeopardy Clause.

### B. Maintaining a Drug–Involved Premises (Count III)

▇▇▇ McKinney contends that the conviction for maintaining a drug involved premises must be dismissed because the government did not offer evidence that he "controlled" the house in Port Huron where the manufacturing activity took place. That argument misconstrues the nature of the conduct proscribed by the statute.

"The offense of maintaining a drug-involved premises under 21 U.S.C. § 856(a) requires proof that the defendant 'knowingly open, lease, rent, use, or maintain any place, whether permanently or temporarily, for the purpose of manufacturing, distributing, or using any controlled sub-

stance....'" *United States v. Russell,* 595 F.3d 633, 642 (6th Cir.2010) (quoting 21 U.S.C. § 856(a)(1)). The plain language of the statute only requires proof that the defendant *"use ... any place ...* for the purpose of manufacturing ... any controlled substance." 21 U.S.C. § 856(a) (emphasis added). The defendant cites no authority for the novel proposition that the government must show that he controlled or maintained the entire structure in question, in order to support a conviction for using "any place" to make illegal drugs. The unrebutted testimony at trial established that the defendant lived in his locked and guarded basement bedroom, put a security system in place to control access to it, and was seen by one witness making methamphetamine in the room, where his personal items and equipment and materials used to make methamphetamine were found.

This case is similar to *United States v. Rhodes,* 730 F.3d 727 (8th Cir.2013), where it was shown that the defendant sometimes slept in one room of a house that had been purchased and was maintained by his stepfather, and where "[a] digital scale with cocaine residue, hydrocodone pills packaged for sale, additional packaging materials, and a loaded pistol were all found in the room that [the defendant] identified as his or under a cushion where he slept." *Id.* at 730. The court found the evidence adequate to sustain a conviction under section 856(a), even though there was no evidence that the defendant owned, rented, or "maintained" the house as a whole. It was enough that there was unrebutted testimony that he "used" the room in which he sometimes stayed and where items used for packaging and selling drugs were found.

And so it is here.

## C. Endangering Life During Manufacture (Count IV)

The defendant argues that this count must be dismissed because the government did not introduce any evidence of either actual harm resulting from the manufacturing activities, or any evidence to prove that any theoretical danger was real and imminent. He contends that absent proof that the "potential" for danger was realized, the evidence is not sufficient to show "a real and substantial likelihood of imminent physical danger," citing *United States v. Underwood,* 364 F.3d 956, 956–66 (8th Cir.2004), *vacated on other grounds sub nom. Carpenter v. United States,* 543 U.S. 1108, 125 S.Ct. 1037, 160 L.Ed.2d 1032 (2005).

*Underwood* does not support the defendant's argument. In that case, the court of appeals dismissed the defendant's sufficiency of the evidence challenge with scant discussion; it addressed the defendant's argument that 21 U.S.C. § 858 was unconstitutionally vague when it observed that the defendant's conduct fell plainly within the language of the statute, because "[a] common interpretation of the words 'substantial risk of harm to human life' suggests not mental, emotional, or spiritual harm as Carpenter argues, but rather that the activity engaged in increases the likelihood of imminent physical danger to humans." *Underwood,* 364 F.3d at 965. Moreover, the court explained that the trial court's instructions to the jury were constitutionally valid and tracked the plain language of the statute where they "defined the risk as originating from either the process of manufacturing of methamphetamine or the storage, transportation, or mixing of chemicals used in methamphetamine production." *Id.* at 965–66. In *Underwood,* there also was no evidence of actual harm, but the court of appeals noted that a "safety assessment" conducted by

police identified "several potential hazards" to residents who were apprehended in various rooms of the house. *Id.* at 961.

 In this case, the trial testimony adequately established that a real and substantial risk of harm to human life was created during McKinney's manufacturing activities, as a result of the use of inherently dangerous toxic, corrosive, and volatile chemicals, several of which can cause fires or burn the skin and mucous tissues if contacted or inhaled. The defendant's reading of 21 U.S.C. § 858 as requiring a showing of a "real and substantial likelihood of imminent physical danger" contradicts the plain language of the statute, which only prohibits creating a "substantial risk of harm to human life." And the *Underwood* case contradicts the defendant's position, because inspection of the house there revealed only "potential" hazards, and the court rejected the sufficiency of the evidence challenge.

The Sixth Circuit also has upheld a sentencing enhancement for creating a substantial risk of harm to life under U.S.S.G. § 2D1.1(b)(6)(A), on facts similar to those in the present case. *United States v. Layne,* 324 F.3d 464, 470–71 (6th Cir. 2003). Despite the fact that no apparent evidence of actual or "imminent" harm was shown in *Layne,* the court of appeals upheld the sentencing enhancement based on the "inherent" hazards resulting from the storage and use of the several highly toxic and flammable chemicals used to make methamphetamine.

The jury's verdict on Count IV was supported by the evidence.

### D. Possession of Material or Equipment (Count V)

McKinney argues that no rational trier of fact could have found him guilty beyond a reasonable doubt on Count V because "the only evidence tying Mr. McKinney to [the equipment and precursors] was the testimony of the cooperating defendants."

Perhaps, but that is no reason to upset the verdict on Count V.

 There is ample testimony from three witnesses with personal knowledge of the defendant's activities that he lived in the basement bedroom, locked and guarded it and erected a security system to prevent unwanted entry by others, and invited his associate Mark Sanchez to stay in the basement with him. Sanchez observed McKinney making methamphetamine in the room, and police later found all of the equipment and materials needed to operate a meth lab in the room, in a red backpack that was identified by witnesses as belonging to the defendant. McKinney does not cite any "conflicting" evidence suggesting that the room was not his, but instead merely points to a lack of other corroborating documentary or circumstantial evidence, and argues that the "only evidence" at trial derived from the testimony of witnesses who he argues were inherently unreliable. The jury, however, considered and rejected all of the indicators of unreliability that the defendant cites, and the fact that the jury found the evidence insufficient on Count VI does not justify setting aside a finding of guilt on other counts as to which the evidence plainly was sufficient.

### III.

The evidence was sufficient to sustain the verdicts on all the counts of conviction. There is no reason to set aside the verdicts and grant the defendant a new trial. The defendant's convictions on both Counts I and II of the indictment do not offend the Double Jeopardy Clause.

Accordingly, it is **ORDERED** that the motion for judgment of acquittal or for a new trial [dkt. # 100] is **DENIED.**