NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0081n.06

No. 16-3229

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| KEVIN R. LUMPKIN, | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| Defendant-Appellant. | ) | OHIO |
| | ) | |
| | ) | |

BEFORE:    GIBBONS, ROGERS, and McKEAGUE, Circuit Judges.

ROGERS, Circuit Judge.  A jury found Kevin Lumpkin guilty of two counts of selling a firearm to a convicted felon, in violation of 18 U.S.C. § 922(d)(1).  As an element of the crime, Lumpkin must have known or had reasonable cause to believe that the purchasers were under indictment for or had been convicted of a crime punishable by over a year of imprisonment.  At trial, the prosecution presented circumstantial evidence of such knowledge.  Lumpkin now appeals his conviction, arguing that there was insufficient evidence for the jury to find knowledge.  He also alleges that he received an unfair trial because an FBI agent told the jury he did not believe Lumpkin was telling the truth about the guns in question during a taped interview.  A reasonable jury could have found Lumpkin guilty based on the circumstantial evidence of knowledge presented at trial, and the district court did not plainly err by allowing the FBI agent's testimony.

Kevin Lumpkin, a police officer in North Randall, Ohio, met Michelle Devine and Calvin Kelly in the summer of 2010, when Kelly and Devine were in a relationship and lived together. During that time, Lumpkin visited their house a few times a week to buy marijuana from and smoke it with Kelly. Also at that time, Kelly was in and out of court due to a pending criminal case and was eventually placed on probation. Devine testified that Lumpkin was around while Kelly discussed his legal troubles. In particular, Kelly once expressed concern that he would fail his drug test because he was still smoking marijuana while on probation, and Lumpkin told him he could buy an antioxidant from a drug store to help pass the test.

In February 2011, a thief broke into Kelly's and Devine's house while they were present. Kelly was shot, and Devine was pistol-whipped. The thief stole cash from the couple's safe. The two kept a lot of cash in the house because Kelly was paid in cash for selling marijuana and Devine was paid in cash for preparing fraudulent tax returns. In fact, Devine prepared a false tax return for Lumpkin—in which he claimed a dependent he did not support—in 2011. After this home invasion, Lumpkin installed a home security system for Kelly and Devine. Lumpkin also sold the couple guns around this time, including a sawed-off shotgun, a .22 revolver, and a Ruger .380 handgun, as well as body armor.

Then came the gun sales for which Lumpkin was ultimately convicted. On May 23, 2011, Lumpkin purchased a Hi-Point rifle and a Bushmaster rifle from Atlantic Gun and Tackle. Lumpkin then sold these rifles to Kelly for $2,000, according to Kelly, or $3,000, according to Devine. The Hi-Point's retail value was between $300 and $320, and the Bushmaster's was between $800 and $900. While responding to a domestic incident at Kelly's and Devine's home in 2013, police found a gun box that matched the Hi-Point rifle in the couple's basement. Kelly eventually turned the Hi-Point over to FBI investigators.

Lumpkin also purchased a Ruger handgun for $349.99 from Fin Feather Fur Outfitters on February 12, 2012. He then sold the Ruger to Devine for $650. Devine testified that Lumpkin did not hesitate when selling her the gun and instructed her to call him first, not the police, if she ever had to use it. The police ended up recovering the Ruger from a third party during a traffic stop in 2014. When the police asked Lumpkin about the gun, he said he had sold it to a coworker in 2010, but could not provide the name or contact information for the man who bought it.

During the federal investigation into these gun sales, FBI agents Mike Haynie and Paul Cruz interviewed Lumpkin at his house. The prosecution played a tape recording of the interview at trial. In the recording, Lumpkin told the agents he had placed the Hi-Point rifle in an ottoman in his living room but did not know where it ended up after that. At one point, the prosecution stopped the recording and asked Agent Haynie: "Can you describe, Agent Haynie, at this point in the interview the demeanor of Mr. Lumpkin?" He responded: "Mr. Lumpkin became—appeared to become more evasive the more evidence we presented to him." Later on, the prosecution again stopped the tape and asked Haynie: "Agent, based on this interview and the statements made, do you believe that?" Haynie responded: "I do not." The prosecution asked again: "You do not believe he's being honest?" Haynie responded: "I do not." Defense counsel did not object to this questioning at trial.

The jury found Lumpkin guilty of two counts of unlawfully selling a firearm to a felon in violation of 18 U.S.C. § 922(d)(1). The first count was based on the Hi-Point sale to Kelly, and the second involved the Ruger sale to Devine. At trial, it was undisputed that Kelly and Devine were convicted felons by the time Lumpkin sold the guns to them—Devine was convicted of aggravated theft, a fourth-degree felony, in 2005, and Kelly pled guilty to receiving stolen

property, a felony, in 2010. Rather, Lumpkin's defense was that he did not know or have reasonable cause to believe that the two were convicted felons, as required by the statute. Lumpkin now appeals on that basis. He also argues that he received an unfair trial due to Agent Haynie's testimony.

The trial evidence was sufficient to sustain the jury's verdict. A person convicted under 18 U.S.C. § 922(d)(1) must have known or had reasonable cause to believe that the buyer was "under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." So long as, viewing the facts in the light most favorable to the prosecution, any reasonable jury could find beyond a reasonable doubt that the defendant satisfied this element, the conviction stands. *See United States v. Volkman*, 797 F.3d 377, 390 (6th Cir. 2015). Direct testimony that the criminal defendant knew he was selling to a convicted felon is not necessary; circumstantial evidence of knowledge is sufficient. *See United States v. Gjergji*, 567 F. App'x 728, 733 (11th Cir. 2014). Despite the fact that no trial witness stated Lumpkin knew that Kelly and Devine were felons, there was ample circumstantial evidence from which the jury could reasonably infer that fact.

It was reasonable for the jury to conclude, from the circumstances of the gun sales, combined with Lumpkin's knowledge of Kelly's and Devine's lifestyle, that Lumpkin knew, or at least had reasonable cause to believe, that the two were convicted felons. Lumpkin knew that Kelly sold and smoked marijuana. Lumpkin was also around when Kelly discussed his criminal legal issues, including being on probation. Furthermore, Lumpkin knew that Devine engaged in illegal activity because Devine prepared a false tax return for him in 2011. Lumpkin also knew that the couple had experienced at least one home invasion, spurred by their keeping a lot of cash at their house, because he installed a home security system for them after the burglary.

With all this knowledge, Lumpkin sold guns and a related item to Kelly and Devine without hesitation—including, in addition to the sales for which Lumpkin was convicted, another rifle, two more handguns, a sawed-off shotgun, and a bullet-proof vest. Perhaps most significant is the fact that Lumpkin charged Devine and Kelly significantly more than retail value for the guns. Whereas the Hi-Point and Bushmaster, combined, were worth $1,100 to $1,220, Kelly paid $2,000 or $3,000 for the rifles, or between $780 and $1,900 more than the guns were worth. Additionally, Devine paid Lumpkin $300 more than Lumpkin paid for the Ruger. These upcharges indicate that Lumpkin knew Kelly and Devine could not buy firearms through an ordinary market. The fact that Lumpkin told Devine to call him first, not the police, should she ever need to use the Ruger is further indication that Lumpkin knew the purchasers could not buy firearms legally. Furthermore, Lumpkin lied to the police about how he disposed of the Ruger when it was found at a traffic stop in 2014. These unusual characteristics of the firearm sales, considered together with Lumpkin's knowledge of Kelly's and Devine's criminal activities, are enough to lead a reasonable jury to conclude that Lumpkin knew or had reasonable cause to believe he was selling to convicted felons.

The fact that Devine had entered into a plea agreement with the government, which included cooperating in the case against Lumpkin, and that Kelly may have had a similar motive to "lie" to avoid prosecution, makes no difference. This court does not weigh witnesses' credibility when examining the sufficiency of the evidence on appeal. *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006).

To the extent that Lumpkin argues that the jury's verdict was against the manifest weight of the evidence, such a challenge has been forfeited because Lumpkin did not move below for a new trial on that basis. *See United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998).

With respect to Lumpkin's second issue, the district court did not plainly err by allowing Agent Haynie to testify about his impression of Lumpkin's sincerity during the FBI interview. Defense counsel did not object to the prosecution's questioning or Haynie's answers at trial. This court is therefore limited to plain error review. *United States v. Oliver*, 397 F.3d 369, 375–76 (6th Cir. 2005). "A 'plain error' is an error that is clear or obvious, and if it affects substantial rights, it may be noticed by an appellate court." *United States v. Barajas-Nunez*, 91 F.3d 826, 830 (6th Cir. 1996). Because Haynie's challenged testimony was brief and based on personal knowledge, admitting it was not "clear or obvious" error.

Lumpkin's challenge to the testimony appears based on Haynie's status as an expert.[1] But Haynie was a fact witness. He was the actual interviewer when the tape was made, and he did not base his opinion as to truthfulness on his experience. This entirely distinguishes various cases cited by Lumpkin involving an expert's testimony under Fed. R. Evid. 702, where the expert was in no better position than the jury to observe the trial or taped statements.

Opinion testimony by a lay witness is covered by Fed. R. of Evid. 701. ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based in scientific, technical, or other specialized knowledge within the scope of Rule 702."). There is a legitimate issue whether Haynie's opinion was admissible under that rule. But even if the evidence might have been excluded, its admission was not plain error. Any error was not clear or obvious. The reference to Lumpkin's truthfulness was brief and a small part of the overall evidence against him.

---

[1] The legal premise of Lumpkin's challenge to Haynie's testimony is unclear. Lumpkin states that he "was denied a fair trial" by the testimony, which sounds like a due process challenge, but Lumpkin never actually refers to the Due Process Clause. He could also be raising a Fed. R. Evid. 701 or 403 challenge. Regardless of the basis for Lumpkin's challenge, however, the district court did not plainly err by allowing the testimony.

Admission of Haynie's opinion did not violate substantial rights or have a substantial influence on the outcome.

The judgment of the district court is affirmed.